## BORGMAN *v.* OMAHA & ST. L. RY. CO.

*(Circuit Court, S. D. Iowa.* February 25, 1890.)

**MASTER AND SERVANT—NEGLIGENCE OF VICE-PRINCIPAL.**

The foreman of railroad repair-shops, to whom is intrusted the task of restoring wrecked trains, with the assistance of a crew of men selected from the workmen in the shops and the section hands, and who has charge of all the men engaged in restoring the train, is, when in charge of a wreck, a vice-principal, for whose negligence the railroad company is liable to a workman injured while under his orders.

At Law. On motion for new trial.
Before BREWER and SHIRAS, JJ.

BREWER, J. In this case is presented a motion for a new trial. The principal question arises on these facts: Plaintiff was a section hand, working on the railroad, then in charge of a receiver, whose responsibility is now assumed by the defendant. A train had been derailed, by which the engine and tender wholly left the track. In attempting to get the tender back on the track, the plaintiff was injured, and the claim was that the injury was through the negligence of one O. E. Smothers, in charge of the work, and known as the "wreck-master" of the road. The trial judge ruled that, whether Smothers was guilty of negligence or no,

he was a fellow-servant of the plaintiff, for whose negligence the master was not responsible, and that the only matter of negligence to be considered was that alleged in failing to furnish reasonably proper and safe tools and machinery. In other words, the personal negligence of all those connected with the work of restoring the wreck was eliminated from the case.

Now, the contention of plaintiff is that, within the spirit and reasoning of the case of *Railway Co.* v. *Ross*, 112 U. S. 377, 5 Sup. Ct. Rep. 184, Smothers occupied such a relation to the road and the work then pending as fairly to be considered a vice-principal,—the immediate and personal representative of the master. I have heretofore had occasion to notice the embarrassments that surround a case of this kind, since the decision of the *Ross Case*. See *Howard* v. *Railway Co.*, 26 Fed. Rep. 837; *Van Avery* v. *Railway Co.*, 35 Fed. Rep. 40; and *Mealman* v. *Railway Co.*, 37 Fed. Rep. 189. The *Ross Case* recognizes the rule that one having control of a department of service is a vice-principal,—one for whose negligence the master is responsible,—and affirms that a conductor of a train has such control of a department. It becomes necessary, therefore, to determine the position and duties of Smothers and other representatives of the company present at the time of this accident. Mr. Smothers' regular work was as foreman of car repairs at the general shops of the company at Stanberry, Mo. His immediate superior there was J. D. Hunter, the master mechanic, who had control of the entire car department of the road. Wrecks, of course, on this road as others, were not of daily, but only occasional, occurrence. Whenever they happened, the entire charge of them was placed in Mr. Smothers; the master mechanic not going away from Stanberry to look after those matters. The working force was obtained by taking skilled mechanics from the car and machine shops at Stanberry, and collecting, for mere manual work, sectionmen along the road as needed. When the working force was thus collected, it was entirely under the control of Mr. Smothers. The work was, of course, temporary; for, as soon as the wreck was restored, the sectionmen went back to their work on the track, and Mr. Smothers and the others to the shops at Stanberry. If the wreck was a light one, but few laborers would be collected; while, if the work was serious, many might be there under his direction. The work might be simple, or it might be one requiring the exercise of large skill and ability; so that, to meet the contingencies of the service, some one ought to be selected, and placed in charge, of ability, skill, and experience. At this particular time the force under Mr. Smothers' control, at work on the wreck, was composed of ten or a dozen men. Besides Mr. Smothers, there was present Mr. Coughlin, the general road-master, and Mr. Buchanan, the general superintendent of the road. The road-master was there mainly for the purpose of putting the track in good condition after the wreck had been restored; and Mr. Buchanan, while present and observing what was going on, was not interfering with Mr. Smothers in the work of restoring the wreck. As to his duties, the following extract from his testimony is sufficient:

"*Question.* As superintendent, what were your duties? *Answer.* I had general oversight of the different ones at work on the road. *Q.* And of all business connected with the road? *A.* Yes, sir."

And in reference to Mr. Smothers he gave this testimony:

"*Question.* He went to all wrecks on the road? *Answer.* All of any consequence. *Q.* At times, when he would go away from Stanberry to take up a wreck, state whether or not he had any superior at that place in charge of the immediate work. *A.* No, sir; everything was to be in his charge when he went to a wreck,—road-master and every one else. *Q.* All under him? *A.* Yes; for the time being. *Q.* State whether all machinery was in his charge also. *A.* Yes, sir. *Q.* Did he keep a wrecking crew at head-quarters? *A.* No. *Q.* He would select a crew from the section-hands along the road? *A.* Yes, sir. *Q.* In whatever direction he might go? *A.* Yes, sir. Sometimes Smothers would take them up as he went along, and sometimes the agent would notify them to go to the wreck."

From this it appears that Smothers had full and entire control of this class of work,—this branch of the service,—and of all engaged therein, including, among others, such general officers as the road-master. It was a position of responsibility, requiring, for the efficient discharge of its duties, ability, skill, and experience. While it was not a continual, but only an occasional, service, yet that fact does not diminish its importance to the company and to the public. It was also an isolated service. The wreck might be anywhere along the track, away from shops and stations, and where, in the nature of things, the master could be present only through him. Further, the very fact that it was an occasional service made the master's duty of selecting a skilled and competent person to take charge thereof more imperative, because in each case a new body of men were collected for the work,—men unacquainted with him, without opportunity of studying his methods and habits. Again, the work is attended with danger. Machinery is to be employed, power of steam made use of, and all the risks that flow therefrom attend this service. There may be many kinds of work going on,—men with shovels, men operating a derrick, engineer and fireman moving an engine. All these various employes, doing their different kinds of work in the one service of restoring the wreck, were in this case under the control and direction of the wreck-master, Mr. Smothers. Further than that, all that was done was done under the eyes of the general superintendent; the one who unquestionably represents the master on all portions of the road. And while he did not in fact interfere, while he did not go there for the purpose of interfering, yet the general oversight, as he says, was in him of all the portions of the road and work, and he was there to take note of what was done; and, if it appeared that the wreck-master was incompetent and negligent, he was there with the duty on behalf of the master of controlling or suspending him.

Many of the elements which in the case of the conductor were noticed by the supreme court in the *Ross Case* as reasons for holding him a vice-principal, and a controller of a department of service, as above noticed, exist here; namely, entire control, separation from all other general officers, service requiring skill and ability, and attended with danger; many

employes under him doing different kinds of work, tending to accomplish the one service; and while, unlike the conductor, his service is not a daily, but an occasional, work, yet with him it was exclusive, he having charge of all that service and work on this road. While the matter is not clear to my mind, and while the case does not come within the letter of the *Ross Case*, yet I think both the spirit and reasoning of that decision compel us to hold that the master was present at the time of this service in the persons of the wreck-master and the general superintendent, and that the former must be adjudged and considered as in control of a department,—a vice-principal,—for whose negligence the master was responsible.

The case of *Mealman* v. *Railway Co.*, *supra*, is much relied upon by counsel for the railroad company, in which I held, on demurrer, that an allegation that a party was master mechanic, having sole control of a yard, did not of itself show that he was in control of a department, and a vice-principal. I did not in that case hold that such a person might not be a vice-principal, but simply that the extent of his powers and duties should be more fully disclosed. I quote this language from that opinion:

"It does not appear from the allegations of this complaint, further than that this master mechanic had sole control of this yard. Whether it was a yard with one switch or two; a side track or two; whether it was a trifling matter, or a large and extensive responsibility; whether this sole control was limited to the repairs of engines or things of that kind, or whether it went to the entire business of a yard of such size, and with so extensive works and duties, that the company is bound to put in charge some man of experience, information, and character,—one for whose acts, in all respects, it should be held responsible,—is not sufficiently disclosed by a mere statement that the party was a master mechanic, having sole control of this yard. The size of the yard, the amount of responsibility or vastness of the business intrusted to him, the extent of his control, is not disclosed. I do not mean to say that he does occupy such a position that he cannot properly be considered as in control of a department, so that the company may be responsible. I simply hold that the complaint, as it stands, is defective in that respect, and the demurrer will be sustained."

Now, in this case, that which was there omitted is disclosed, and it seems to me that it is apparent, not simply that the entire wreck service on this road was placed in charge of Mr. Smothers, but also that the work, extending over the entire line of road, was of such importance to the company and the public, and of such nature in itself, as required that the company should put in charge some man of experience, information, and character, and one for whose acts in respect to the service it should be held responsible. I do not know that I can add anything to make my views clearer. It seems to me that my Brother Love erred in withdrawing this question of the personal negligence of those in charge of the work from the consideration of the jury, and I therefore advise that a new trial be given. I have considered this case upon general principles, and in the light of the recent rulings of the supreme court of the United States. If the question were one of purely local law, and to be determined by the decisions of the supreme court of the state of Missouri,

in which state the accident happened, there would be no question as to the responsibility of the master for the negligence of Smothers, the wreck-master. *Moore* v. *Railway Co.*, 85 Mo. 588; *McDermott* v. *Railway Co.*, 87 Mo. 285; *Dowling* v. *Allen*, 88 Mo. 300; *Tabler* v. *Railway Co.*, 93 Mo. 79, 5 S. W. Rep. 810. But, as to how far such decisions should be controlling here, see *Easton* v. *Railway Co.*, 32 Fed. Rep. 895, and *Railway Co.* v. *Lockwood*, 17 Wall. 368.

SHIRAS, J., (*concurring*.) I entirely concur in the conclusion announced in the foregoing opinion of the circuit judge, to the effect that it was error to hold, as matter of law, that Smothers, the wreck-master, was a fellow-servant with plaintiff, for whose negligence in the control of the work of removing the wrecked cars from the line of railway the company could not be held responsible, and that consequently a new trial should be granted. I cannot, however, yield assent to the views therein expressed as to the test to be applied in determining whether, in a given case, parties occupy the position of co-employes. It is said that embarrassments surround a case of this kind since the decision of the *Ross Case* by the supreme court. As I understand the principle intended to be recognized by the supreme court in the *Ross Case*, it is that where a given operation connected with a railway requires care and oversight for the proper performance thereof, and for that purpose there is placed in charge thereof one clothed with the duty of supervising and managing the given work, having the power of control and direction over those employed in the details of the same, who in turn are expected to obey the orders and instructions of the former, such person, in carrying out the duty of control, supervision, and management, represents the company, and for his negligence in the performance thereof the company is responsible. The test of responsibility is not the question whether the person guilty of negligence is at the head of some recognized department of the corporate business. Responsibility on the part of the company arises out of the fact that the power of control, management, and direction has been conferred upon the one touching the special business in hand, and the duty of obedience is exacted from the others. The one is charged with the duty of controlling, managing, directing; the others, with that of obedience and performance; and the relation thus constituted is not that of co-employes, but that of the representative of the company and its employes. Under such circumstances, the railway company looks to the person who exercises the power of control and management, whether he be called a superintendent, manager, road-master, conductor, boss, foreman, or what not, for the proper performance of the special work placed under his charge, and requires of those working under his direction obedience to his orders. Where obedience is thus exacted, responsibility is incurred. The railway company cannot, in effect, say to its employes: "Here is certain work to be done, requiring care and skill to secure its proper performance. In the doing it, we place you under the control of A. B., to whose skill and judgment we intrust the management of the work, and we require of you obedience to his orders and directions."

And then, when sought to be held liable for the negligence of A. B. in the management of said work, causing injury to one under his control, say: "A. B. did not represent the company. He was not the head of a department, or its equivalent. The work at which you were employed under his control was a small matter. Only a few men were subject to his orders. He was not clothed with the dignity of a vice-principal. He bossed you, but he did not represent the company. He was merely your co-servant; and the company, which required you to obey his orders, is not responsible for the result of such orders." The test is not necessarily to be found in the extent of the work to be done, in the number of men employed, the size of a yard, or other like considerations. When the work to be done is of such a nature that supervision thereof is required, and the company confides to one the duty of exercising control and management, and demands of others obedience to his behests, it cannot be said that all occupy the same position towards the company, and towards each other. In the management of the business, the one speaks for and represents the company, and, in carrying out the orders or obeying the directions of the one, the others are obeying the commands of the master. For negligence in the exercise of the duty of supervision and control, which is a duty of the master not to be evaded, the corporation is responsible to one injured thereby, unless he is also guilty of negligence contributing to the injury. The test of responsibility, it seems to me, must be sought in this matter of the exercise, on the one hand, of control and supervision, and on the other of the duty of obedience to such supervision; and this relation may exist without regard to the extent of the work intrusted to the supervision of the representative of the company. Such seems to me to be the tendency of the later decisions upon this question, and, on principle, it seems to me to be the rule best calculated to produce beneficial results, when applied to the relations between railway companies and their numerous classes of employes.