ThOMAS G. NEAL vs. NORTHERN PACIFIC RAILROAD CO.

Argued May 15, 1894. Reversed May 25, 1894.

No. 8672.

**Telegraph lineman and roadbed repairing crew fellow servants.**
Defendant had a crew of men, under the direction of a foreman, employed in blasting and quarrying stone along the line of its road, to be used in repairing its roadbed. The blasting of rock frequently broke down the defendant's telegraph poles and wires along its road in the vicinity of the quarry. The plaintiff, a lineman in the employment of defendant, who received his orders from defendant's superintendent of telegraph, was engaged in repairing the telegraph line whenever broken down by the blasting. Any assistance required by him was obtained from the quarry crew, on whom he had a right to call for aid. A tele-

graph pole having been thrown down by a blast, plaintiff and one of the quarry men descended to the lower side of the railroad embankment to repair it, and, while they were thus engaged, one of the quarry men negligently rolled a rock down the embankment, and injured the plaintiff. *Held,* that the plaintiff and the quarry crew were fellow servants within the rule which exempts the master from liability for injuries sustained by one servant through the negligence of another.

Appeal by defendant, Northern Pacific Railroad Company, from an order of the District Court of Ramsey County, *John W. Willis,* J., made October 25, 1893, denying its motion for a new trial after verdict for plaintiff, Thomas G. Neal, for $18,525.

*J. H. Mitchell, Jr., T. R. Selmes* and *C. D. & Thos. D. O'Brien,* for appellant.

The conclusion of the jury that the plaintiff and the quarry crew were not fellow servants has no possible weight, for it is not left to a jury to define who are or who are not fellow servants. When the facts are in conflict and when in the law upon one state of facts the relation of fellow servant may exist, while upon the other side it does not exist, then the jury are at liberty to find the fact and upon that finding the law bases its conclusion as to the legal relation of the parties. But here there was no conflict of fact. The plaintiff's statement of the situation so far as his relation to the other men was concerned is absolutely accepted, and there is no pretense upon the part of the plaintiff that Stout, the boss in charge of the work, was a vice principal, or that if he was his negligence in anywise contributed to the injury. In view of the entire concurrence of all of the authorities upon this point we content ourselves with a reference to some of them. *Lindvall* v. *Woods,* 41 Minn. 212; *Bergquist* v. *City of Minneapolis,* 42 Minn. 471; *Fraser* v. *Red River Lumber Co.,* 45 Minn. 235; *Marsh* v. *Herman,* 47 Minn. 537; *Brown* v. *Winona & St. P. R. Co.,* 27 Minn. 162; *Olson* v. *St. Paul, M. & M. Ry. Co.,* 38 Minn. 117; *Foster* v. *Minnesota Cent. Ry. Co.,* 14 Minn. 360; *Fraker* v. *St. Paul, M. & M. Ry. Co.,* 32 Minn. 54; *Collins* v. *St. Paul & S. C. R. Co.,* 30 Minn. 31; *Connelly* v. *Minneapolis E. Ry. Co.,* 38 Minn. 80; *Brown* v. *Minneapolis & St. L. Ry. Co.,* 31 Minn. 553; *Roberts* v. *Chicago, St. P., M. & O. Ry. Co.,* 33 Minn. 218; *Gonsior* v. *Minneapolis & St. L. Ry. Co.,* 36 Minn. 385;

*Chamberlain* v. *Milwaukee & M. Ry. Co.*, 7 Wis. 425; *Moseley* v. *Chamberlain*, 18 Wis. 700; *Cooper* v. *Milwaukee & P. R. Co.*, 23 Wis. 668; *Howland* v. *Milwaukee, Lake Shore & W. Ry. Co.*, 54 Wis. 226; *Dwyer* v. *American Exp. Co.*, 55 Wis. 453; *Blazinski* v. *Perkins*, 77 Wis. 9; *Johnson* v. *Ashland Water Co.*, 77 Wis. 51; *Peschal* v. *Chicago, M. & St. P. Ry. Co.*, 62 Wis. 338; *Chapman* v. *Erie Ry. Co.*, 55 N. Y. 579; *Dewey* v. *Detroit, G. H. & M. Ry. Co.*, 97 Mich. 329; *Baltimore & O. R. Co.* v. *Baugh*, 149 U. S. 368; *Potter* v. *New York Cent. & H. R. R. Co.*, 136 N. Y. 77; *Corneilson* v. *Eastern R. Co.*, 50 Minn. 23; *Stutz* v. *Armour*, 84 Wis. 623; *Schaible* v. *Lake Shore & M. S. Ry. Co.*, 97 Mich. 318.

*M. E. Clapp* and *McDonald & Barnard,* for respondent.

At the time of the accident the plaintiff was in the employ of the Northern Pacific Railroad Company as a telegraph line repairer having charge of a division of telegraph line extending from Palmer to Ellensburg. It consisted of four wires, one used by the train dispatcher, and the quadruplex wire. At the time of the accident the dispatcher's wire had been repaired and plaintiff was in the act of repairing the others. The railroad company was engaged in cutting out rock for ballasting. The rock was to be hauled some distance from the point at which it was gotten out. The crew in the act of blasting knocked the wires down. While engaged in repairing or rep'acing the wires plaintiff was injured by a rock rolling down upon him occasioned by the carelessness of one of the blasting crew. The men engaged in blasting were under the control of a Mr. Stout who had no control whatever over the plaintiff, he being at work under the instructions of one Mason, the assistant general superintendent of the telegraph line department. Without reviewing at any length the labyrinth of cases upon this question, we submit that plaintiff and the blasting crew were not fellow servants. *Chicago & N. W. Ry. Co.* v. *Moranda,* 93 Ill. 302; *Hobson* v. *New Mexico & A. Ry. Co.*, 28 Am. & Eng. Railroad Cas. 360; *Dixon* v. *Chicago & A. R. Co.*, 109 Mo. 413.

The verdict was not excessive. *Flanders* v. *Chicago, M., St. P. & O. Ry. Co.*, 51 Minn. 193; *Ehrman* v. *Brooklyn City R. Co.*, 131 N. Y. 576; *Worthen* v. *Grand Trunk R. Co.*, 125 Mass. 99.

MITCHELL, J. This action was brought to recover damages for personal injuries caused by the alleged negligence of the defendant. The plaintiff was in the employment of the defendant as telegraph lineman, his duty being to repair defendant's telegraph line at such points as he might be directed. He received his orders from defendant's assistant superintendent of telegraph.

On, and for some time prior to, the date of the accident, the defendant had a crew of men, under the direction of a foreman, engaged in blasting and quarrying rock upon the line of its road in the vicinity of Canton, Wash., for the purpose of using the rock in riprapping injured portions of its line at points some distance from the place where the rock was procured. The place is in a mountainous district along a river, the roadbed being excavated out of the side of the mountain, some little distance above the stream, so that on the upper side of the track there was a steep rock cliff, and below the track a steep decline down towards the river. Defendant's telegraph line was constructed fifteen or sixteen feet below the track, down the embankment. On account of this conformation of the ground, it followed that, when rock was blasted from the cliff on the upper side of the track, detached pieces were thrown across the road down the bank below, which frequently broke down the telegraph poles and lines. After a blast was fired off, it was the duty of the quarrying crew to pile up the loosened and detached rock alongside the track, to be hauled by trains to the place where the rocks were to be used for repairs.

This work had been going on for some three weeks, during which time the plaintiff had been engaged in repairing, whenever necessary, the telegraph line when broken down or injured by the blasting. Any assistance required by him in doing this work he obtained from the quarry crew, upon whom he had a right to call for aid. On the day in question he accompanied the quarry crew to the place where this work was being carried on.

A blast having been fired off, a quantity of stone was thrown upon the track, while some was hurled down the bank, knocking down the wire and a telegraph pole. The plaintiff, in company with one of the quarry gang, proceeded to repair the wire and pole, while the remainder of the men appear to have been engaged in removing from the track, and piling up, the rock which had been detached

by the blast. While plaintiff was thus engaged, a large rock rolled against his leg, so injuring it as to render necessary amputation below the knee. So far there is no conflict whatever in the evidence. The only dispute is as to the manner in which the accident occurred. Plaintiff's claim was that one of the quarry crew pried the rock off the railroad track, and rolled it down the embankment, while defendant's contention was that the rock had been previously thrown down the embankment by the blast, and lodged against the foot of the pole which plaintiff was readjusting, and that it was his own efforts to restore the pole which caused the rock to roll against his leg. Which party was right on this point was a question for the jury. The only legal question in the case is whether, on the facts, the plaintiff and the members of the quarry crew were fellow servants within the rule which exempts the master from liability for injuries sustained by one servant through the negligence of another.

The trial court left this question to the jury. As the facts were undisputed, and showed precisely what the respective duties of the plaintiff and of the quarry crew were, and what relation they bore to each other, the question was one of law, and should have been decided by the court. But if, as a matter of law, the plaintiff and the quarry crew were not fellow servants within the meaning of the rule, the error of the trial court in leaving the question to the jury would not be prejudicial to the defendant.

Ever since the "common employment" doctrine was announced in *Priestley* v. *Fowler*, 3 Mees. & W. 1, courts and text writers have been attempting to lay down some formula or test by which to determine what servants of a common master are fellow servants within the rule that exempts the master from liability. The books abound in statements that they must be "engaged in the same common pursuit, under the same general control," or "engaged in the same general business, though it may be in different grades or departments of it," or "engaged in the same general employment, working to accomplish the same general end, though it may be in different departments or grades of it." Of course, such definitions are very unsatisfactory, unless we are told what is meant by the expressions "the same common pursuit," "the same general business," etc., for upon the meaning to be attached to these terms the entire question depends.

A few western states, adopting what is termed the "consociation

doctrine," hold, in substance, that only those are fellow servants, within the rule, who work side by side, performing the same or similar duties.    This doctrine, however, has received but little favor in the courts of either England or America, and, in our opinion, proceeds upon an erroneous theory as to the reason for the rule exempting the master from liability.

At the other extreme may be found some authorities which seem to include within the category of fellow servants all employés of the same common master, however essentially dissimilar and disconnected their occupations.    Neither has this view been received with any general favor.    But ever since the leading and pioneer case of *Farwell* v. *Boston & Worcester R. Co.*, 4 Metc. (Mass.) 49, the overwhelming majority of the authorities have repudiated the "same department" or "consociation" theory, and have held that the rule is not confined to the case of servants working in company at the same or similar duties, and having opportunity to control or influence the conduct of each other, but extends as well (there being no question of vice principal involved) to those who derive their authority and compensation from the same source, are engaged in the same general business (though in different departments or grades of it), working to accomplish the same general end.

This has been the view uniformly entertained and expressed, although perhaps not always correctly applied, by this court, from *Foster* v. *Minnesota Cent. Ry. Co.*, 14 Minn. 360, (Gil. 277), down to our latest utterances on this subject.    We have never attempted to lay down any cast-iron formula, except in general terms, by which all cases shall be determined, and we shall not now dare to attempt what no court has yet succeeded in doing.    But we are satisfied that, while we have never passed upon a case with precisely the present facts, yet according to the unbroken line of decisions of this court, and the great weight of authority elsewhere, it must be held that the plaintiff and the quarry crew were fellow servants.

That they were all servants of the same master is of course conceded.    And, although engaged in different lines of duty, they were all engaged in the same general business, working to accomplish the same general end, to wit, the maintenance and repair of defendant's railway,—one, in getting out stone to repair the roadbed; the other, in repairing the telegraph line, which was as essentially a

part of defendant's railway, for purposes of actual operation. as were the ties and iron. Had plaintiff been a track repairer, and been injured in the manner he was, there could have been no doubt under our decisions but that he and the quarry crew would have been fellow servants. But we can see no difference, in principle, between the relation which plaintiff bore and that which a track repairer would have borne to the general business of the master or to the quarry crew.

It is also to be observed that it was not a case where there could have been any interference or interposition on the part of the master to protect the plaintiff from the acts of the quarry crew while at work, or where he had a right to expect any such interposition. They were working side by side, and, to a certain extent, together, and he was in just as good, or better, position to protect himself as his employer was to do it for him. Indeed, we are inclined to think that even under the "consociation doctrine," at least as applied in some of the states which have accepted it, plaintiff and the quarry crew would be held to be fellow servants.

Order reversed.

Buck, J., absent, sick, took no part.

Canty, J. I agree with the result in this case, but not with the rule derived from *Farwell* v. *Boston & Worcester R. Co*, 4 Metc. (Mass.) 49, that the master is never liable for an injury to a servant in one department caused by the negligence of a servant in another department. In my opinion, the doctrine laid down by the greater number of the courts of the states and the courts of England that all who are engaged in the same common service, including all grades, classes, and departments subject to the same general control, are fellow servants, is not always correct.

On the other hand, the doctrine that servants not consociated are not fellow servants, as held in Illinois, Missouri, and one or two other states, is not always the correct rule. The rule which makes consociation the only test, as held by these courts, it seems to me, is as unsound as the other rule, which wholly excludes it as an element to be considered in determining who are fellow servants.

Where the servant in one department of the general business is so situated that he cannot have the knowledge of the acts and omis-

sions of the servants in another department necessary for his protection, but some common or intermediate authority over both departments can, by the exercise of reasonable care, obtain such knowledge, and by making the proper use of it protect such servant, then the exercise of such intermediate authority is a duty which devolves on the master, and one which he cannot delegate, and the failure to exercise which makes him liable to the servant injured. In such a case the master's right hand should know what his left hand is doing. But where no such intermediate supervision is practicable, or the servant in one department is in as good a position to observe and know of the negligent acts or omissions of the servants in the other department as any such intermediate or common overseer can be, and as well able to protect himself as such overseer is to protect him from the consequences of such acts or omissions, then the fellow-servant rule applies, and he must take care of himself. Examples of cases in which the master should be held liable for failure to perform the duty of common overseer of two departments are such as *Madden* v. *Chesapeake & Ohio Ry. Co.*, 28 W. Va. 610; *Ragsdale* v. *Northern Pac. R. Co.*, 42 Fed. 383; *Cooper* v. *Mullins*, 30 Ga. 150; *Smith* v. *Wabash, St. L. & Pac. Ry. Co.*, 92 Mo. 359, (4 S. W. 129,)—where trains on the same track came in collision with each other, whereby the servant was injured by reason of the want of an intermediate overseer, or by reason of the negligence of the intermediate overseer to use such proper and reasonable precautions as would have kept the trains apart.

Examples of cases where such interposition by the master is not practicable are such as *Toledo, W. & W. Ry. Co.* v. *O'Connor*, 77 Ill. 391; *Chicago & N. W. R. Co.* v. *Moranda*, 93 Ill. 302; *Sullivan* v. *Missouri Pac. Ry. Co.*, 97 Mo. 113, (10 S. W. 852;) *Parker* v. *Hannibal & St. Jo. R. Co.*, 109 Mo. 362, (19 S. W. 1119,)—where the section men, or others working on or about the track, were injured by the engineer running the train. In the first class of cases the servant was absolutely powerless to protect himself, while, to a greater or less degree, the master was in a position to protect him.

In the last class of cases these conditions were reversed, and the immediate interposition of the master was not practicable, while the servant was in a position, to a greater or less degree, to protect

himself. Yet, by the consociation rule applied in those states, this distinction was ignored, and the master was held liable in all of these cases.

Again, it was held by one of the same courts, applying the same rule, that a brakeman on one train was a fellow servant with the fireman on another train, and that the latter could not recover for an injury received in a collision caused by the negligence of the former, where the train dispatcher had run the rear train ahead of time without notice to the crew of the forward train. *Relyea* v. *Kansas City, Ft. S. & G. R. Co.,* 112 Mo. 86, (20 S. W. 480.)

It was also held by the same court that where a brakeman on one train was injured by the negligence of the crew of another train in leaving a car on a side track, dangerously near the main track, at a regular station, where the car so remained about ten or twelve hours, they were all fellow servants, and the master was not liable. *Schaub* v. *Hannibal & St. Jo. R. Co.,* 106 Mo. 74, (16 S. W. 924.)

In each of these cases there was more or less opportunity for the interposition of the master, while the servant was powerless to protect himself. In the first case the injury might have been attributed to the negligent act of the master in running the rear train ahead of time, and in the last case on his negligent omission in failing, after a reasonable time, to discover that the car on the side track was dangerously near the main track. I have already discussed this question much further than the case now before the court calls for, and, in applying these principles to this case, it is plain that the lineman was in a better position to protect himself than any such intermediate overseer could be to protect him, that the interposition of such intermediate or common overseer between him and the quarrymen working in the other department was not practicable, and that he and they were therefore fellow servants.

(Opinions published 59 N. W. 312.)