JOHN BLOMQUIST v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY
COMPANY.[1]

April 9, 1895.

No. 9187.

**Master and Servant—Negligence of Vice Principal.**

> *Held*, in this action, which was brought to recover for injuries said to
> have been the result of defendant's negligence when constructing a plat-
> form on which to rest a derrick, that from the evidence it conclusively
> appears that the foreman of the crew with which the plaintiff was work-
> ing as a common laborer was a vice principal, for whose negligence de-
> fendant must be held responsible.

**Assignments of Error.**

> Certain assignments of error disposed of.

Appeal by defendant from an order of the district court for Fill-
more county, Whytock, J., denying a motion for a new trial on con-
dition that plaintiff would consent to accept $4,000 as the verdict.
Plaintiff consented to remit $1,000 of the verdict, and accept the sum
named by the court. Affirmed.

The facts are stated in the opinion. Defendant's assignments
of error therein referred to were as follows: The court erred: "(2)
In instructing the jury that Enger, the foreman of the gang in which
plaintiff was employed, from the undisputed evidence, represent-
ed the defendant, and that it would be responsible for his acts
and orders on that occasion. (3) In instructing the jury that,
if the defendant did not exercise a reasonably safe degree of care
to supply and construct a reasonably safe foundation for the der-
rick, the defendant would be liable. (4) In instructing the jury
that if they should find that the foundation upon which the der-
rick was erected was defective in its construction and prepara-
tion for the work intended to be done by it, so that the same was
not a reasonably safe one for the purpose for which it was to be
used, and that the plaintiff did not participate in the construction
and preparation of the foundation, and did not know of such faulty
construction, and that, by reason thereof, the derrick fell, and in-

[1] Reported in 62 N. W. 818.

jured the plaintiff, then the verdict should be for the plaintiff."   "(8) In permitting the witness Johnson to testify on behalf of the plaintiff as to whether there was furnished material sufficient in quality and quantity to make the platform of the derrick reasonably and suitably safe, so it would not fall down.   (9) In permitting the witness Case to testify on behalf of the plaintiff that the foundation and platform erected as described by the witness Johnson were not, in his opinion, properly planned and constructed for the use to which they were put; and were not reasonably safe upon which to erect and operate a derrick for lifting stone."

Defendant's requests for instructions referred to in the opinion were as follows:   (1) "The jury are instructed that there is no evidence in this case that the defendant failed to provide sufficient material for the construction of the platform."   (2) "The jury are instructed that there is no evidence in this case that the proximate cause of the accident was a failure on the part of the defendant to provide a sufficient quantity of material for the erection of said platform."   (3) "If the jury believe that, in the prosecution of the work carried on at the time of the accident, the gang to which the plaintiff belonged were provided with a derrick and other appliances connected therewith, which were to be set up and erected by the men composing the gang, upon a platform to be erected by them, and the defendant had provided suitable timbers and material for the erection of said platform, and the said platform was erected by men in said gang, under the general direction of said foreman, and the said platform fell by reason of careless or improper construction of said platform, then your verdict must be for the defendant."

*H. H. Field* and *Wells & Hopp,* for appellant.

*Gray & Thompson* and *Davis, Kellogg & Severance,* for respondent.

COLLINS, J.   The plaintiff was injured by the falling of a derrick while in defendant's employ, and brought this action to recover damages.   The verdict was in his favor, and the appeal is from an order denying defendant's motion for a new trial.   The assignments of error go to rulings of the court in the admission of evidence, its refusal to direct a verdict for defendant, and its refusal to give certain instructions to the jury.

As said by appellant's counsel in their brief, the controlling question in the case is whether the accident resulted from the negligence of plaintiff's fellow servants. If it did, it must be admitted that plaintiff cannot recover. The facts were that plaintiff had been in defendant's employ for several months with a crew of stone masons, who went from place to place along the railway lines, repairing and rebuilding bridge abutments. He was a common laborer, and, with other laborers, aided the masons in their stonework. The crew of men carried with them one or more derricks, and material used in setting them up, which were set up as required, and taken down for transportation elsewhere when no longer needed at that particular place. This crew of masons and laborers were under the immediate supervision and control of a foreman, named Enger. He hired and discharged them as became necessary, told them where to work and what to do. Plans for the work were furnished to Enger by defendant's assistant engineer of bridges, one Wood. It appears from the evidence that Wood directed, in a general way, the operations of this crew of men and of several other crews engaged in the same line of work for defendant, which was a foreign corporation, at other places, but he did not exercise special supervision unless on the ground. He was not present at the place where the accident occurred at any time after the crew went there, and gave no special directions concerning the work. It there became necessary to put up a derrick with which to handle stone, and Enger pointed out the place where the platform or scaffold should be built on which the derrick was to stand. There was also evidence tending to show that he gave directions as to just how the platform was to be built. This place was on the south side of the track, which was on top of quite an embankment, on the side of which the platform was to be built up, and brought to a level with the track, out of materials brought there for this purpose,— timbers of different lengths, about six or eight inches square. A trench was first dug near the bottom of the bank, parallel with the track, in which was laid one of these timbers. Short timbers were then rested on the bed piece, at right angles with it, and running into the bank, and then more pieces were placed parallel with the track. This manner of construction was carried on until the required height was reached, and on top, as a floor, were placed tim-

bers about six by twelve inches in size. This structure was not bolted or fastened together in any way, and on top of it was placed the derrick, the foot of the mast resting on the flooring, and the top firmly fixed in position by the usual guy ropes. This platform was built and the derrick placed in so defective a manner that a tyro in mechanics should have known that, if a stone of sufficient weight suspended at the ends of the boom and stay arm was brought to a certain height directly across the track from the derrick, the pressure on the foot of the mast, outwardly from the embankment, would topple the platform over. The plaintiff had nothing to do with the building of the platform, was at work in another place, and testified that he did not know how it was built. When all was ready for operations, he was put at work turning the derrick c ank, with other men, all standing on the platform floor. The stones to be elevated and removed were on the north side of the track, and, on attempting to lift a heavy one, the pressure of the boom against the foot of the mast and away from the embankment caused the platform to collapse and the derrick to fall, plaintiff receiving the injuries complained of.

It cannot well be denied that the foundation for the derrick was constructed in a very negligent manner, and from an examination of the evidence we are convinced that Enger, the foreman, must be declared to have been a vice principal when it was built. We have stated his general duties as foreman of the stone crew and what was actually done by him in relation to the building of this particular platform. In addition to what has been said, it appeared from the evidence of Wood, the assistant engineer, whose office and residence were out of this state, that Enger had supreme control of the men and the work at all times when Wood himself was absent; that plans were furnished to him from the engineer's office for the work; but that, because of the varying conditions, no plans were ever furnished for putting up the derricks. They were to be erected where and in the manner directed by Enger. This was always left to his judgment, and the proofs were that in every instance he had control of the methods, and it was the duty of the men under him to put up the derricks and otherwise to work as he ordered. To put it concisely, it appeared from the evidence that defendant company had absolutely withdrawn all discretion from the men composing

the crew as to where and how derricks should be erected, and had invested Enger with full power to devise the plans for the structure and complete control over the whole matter. The place, the plan, and the manner of putting up these appliances had been especially and unconditionally delegated to the foreman, and herein is one of the distinctions which may be made between this and the somewhat noted case of Lindvall v. Woods, 41 Minn. 212, 42 N. W. 1020, on which counsel for defendant mainly rely. Enger, the foreman, when directing where and how the platform was to be built, represented defendant company, became a vice principal; and it conclusively appeared that the company was responsible for his negligence. It follows from what has been said that the trial court was not in error when giving such portions of its charge as are made the basis for counsel's second, third, and fourth assignments.

Both parties introduced more or less testimony on the question of the sufficiency of materials furnished by defendant for constructing the derrick platform, plaintiff claiming that adequate materials were not furnished, and defendant insisting that there was an abundance. Because of the views heretofore expressed as to the representative position held by the foreman, this question is not of importance, but the court was right when refusing to give to the jury defendant's requests numbered 1, 2, and 3.

The eighth and ninth assignments of error are not meritorious. Both of the witnesses were men of some experience in the putting up of derricks, and in some degree capable of expressing expert opinions. The value of these opinions was for the jury in each instance.

Order affirmed.


CANTY, J. I cannot concur in the foregoing opinion. It cannot be held in this case, as a question of law, that the foreman, Enger, was a vice principal, except on the doctrine that the mere fact that the foreman has authority to hire, discharge, and oversee other servants constitutes him a vice principal. This is the doctrine of the courts of Ohio and some other states, and was for a time the doctrine of the federal courts. This court has never before adopted that doctrine. This case cannot be distinguished in principle from Lindvall v. Woods, 41 Minn. 212, 42 N. W. 1020. And, while the

majority profess still to follow the extreme doctrine of that case, they have in fact gone to the other extreme, and adopted the Ohio doctrine. If the doctrine of Lindvall v. Woods is to be overruled, it should be overruled squarely, and not in this manner. On the question of whether such a foreman is a vice principal, the different courts take one extreme or the other. But I am of the opinion that between these two extremes there is a middle ground, which is far more just, and the principles of which are sound and practicable. These principles I will hereinafter discuss.

The foundation for the platform of the derrick in this case was a temporary appliance, constructed by the men in the progress of the work, as was the defective trestle in Lindvall v. Woods, the insufficient curbing and braces for the same in Bergquist v. City of Minneapolis, 42 Minn. 471, 44 N. W. 530, the defective step on the side of the lumber pile in Fraser v. Red River Lumber Co., 45 Minn. 235, 47 N. W. 785, and the defective scaffold in Marsh v. Herman, 47 Minn. 537, 50 N. W. 611. In each of these cases this court held that the rule which imposes on the master the duty to provide safe machinery and appliances for the use of his servants has no application to temporary appliances of this character; that, when such appliances are prepared during the progress of the work by some of the servants of the common master, they do not come within that rule, and I concede this to be the correct principle. But in the case of Sims v. American S. B. Co., 56 Minn. 68, 57 N. W. 322, this court, while professing to adhere to that doctrine, held that the mere fact that the temporary appliance—the scaffold—was constructed by servants employed for that purpose, and that the servant injured took no part in the construction of the same, entitled him to recover if the scaffold was defectively constructed, by reason of the negligence of those servants who constructed it, and he was injured thereby. This is simply holding that servants employed by the same common master, in different departments of the same work, are not fellow servants, and that the master is liable for the negligence of a servant in one department resulting in injury to a servant in another department. This court has often repudiated that doctrine. See Neal v. Northern Pac. R. Co., 57 Minn. 365, 59 N. W. 312, and cases cited. The derrick platform was a temporary place, constructed by the fellow servants of plaintiff as a

part of the work in which they were engaged. It was not a permanent place provided by the master beforehand, and what is known as the rule that the master must use due care to provide a safe place for his servants to work in does not apply. But, in my opinion, it does not follow from this that the defendant should not be held liable.

The plaintiff is a common laborer. He was not employed to exercise the mechanical skill or expert knowledge which may have been necessary to determine whether or not the foundation for this derrick was safe. This foundation was built beside the railroad track, on the slope of an embankment. The stone which was being raised at the time was across the track, on the opposite side of the embankment, and was unusually heavy. The outer end of the boom or arm of the derrick was more than one-half the length of the upright mast, away from the mast. Applying the principle of the lever, the top of the mast, being held fast by the guy ropes, would act as a fulcrum, and the weight of the stone on the end of the boom would have a tendency to push the bottom of the mast off in the opposite direction, down the embankment, with a side pressure of about one-half the weight of the stone, and this probably caused the foundation to give away. But, whether it was this or some other cause, it cannot be held, as a question of law, that a common laborer should have sufficient skill to investigate this foundation for himself, and decide whether or not it was safe, or that he should know or appreciate the dangers to which he was being exposed. If he had or should have had such skill, it was his duty to exercise it, and the master should not be held liable. But if he was not employed to have, did not have, and could not be expected to have, the skill reasonably necessary for his own protection, the duty of protecting him should devolve upon the master. The plaintiff is not paid for exercising such skill, and it is a beautiful theory of law which requires him out of his wages, of perhaps one dollar per day, to hire an expert whose services are worth five or ten dollars per day, to inspect these temporary appliances for him, and inform him as to their safety.

As I have stated, it is held by a number of courts that the mere fact that the superior servant has power to hire, discharge, and direct the inferior servant is alone sufficient to constitute the supe-

rior servant a vice principal as to the inferior servant; but it seems to me that it should require something more to give the superior servant that character. It is often the case that the inferior servant is more familiar than such foreman with the dangers to which he is exposed, and is better able to protect himself from those dangers than the foreman is to protect him; and yet without his fault, and by reason of exposure to those dangers, he may be injured through the negligence of the foreman. When the inferior servant knows and appreciates the dangers to be avoided, and is as well, or nearly as well, able to care for himself as the foreman is to care for him, he is substantially on an equal footing with the foreman, and in a better position than the master to look out for his own safety. In such a case the foreman is not a vice principal, but he and the inferior servant are fellow servants. On the other hand, when the servant does not know or does not appreciate the danger to be avoided, and from his grade or position cannot be expected to know or appreciate such danger, while a competent foreman should be required so to do, it is not good public policy to hold that the master is not liable for the negligence of the foreman, resulting in injury to the servant. It is very often the case that the prosecution of the work requires a very high degree of skill and experience in the foreman, and but little skill or experience in the inferior servant, who is neither hired nor paid to exercise the skill necessary for his own protection. If the position of the foreman is one which requires of him superior knowledge or skill, which cannot be required or expected of the inferior servant, but which is necessary for the protection of such inferior servant, then, in regard to the exercise of such superior knowledge or skill, the foreman is a vice principal.

There must be something more in the inequality of the foreman and inferior servant than that which results alone from the one having the authority to hire, discharge, and oversee the other. It is the actual disparity or inequality between them which should control, and the disparity which gives the foreman the character of vice principal must be substantial, not merely slight. As far as I am able to discover, after much investigation, there are but two kinds of this disparity: (1) Disparity of knowledge; and (2) disparity of skill. Disparity of knowledge is where the foreman has or should

have knowledge which the inferior servant neither has nor can be expected to have, the want of which knowledge on the part of such servant causes or contributes to his injury. Disparity of skill is where the foreman has or should have skill which the inferior servant neither has nor can be expected to have, the want of which skill on the part of such servant causes or contributes to his injury. The existence of such disparity of either or both kinds is a question of fact for the jury, and the burden is on the party asserting such disparity to prove it.

The first case holding the foreman to be a vice principal, by reason of his having authority to hire, discharge, and oversee the servant, was a case where there was such disparity of knowledge between the foreman and the inferior servant. It is the case of Little Miami Ry. Co. v. Stevens, 20 Ohio, 415, where two trains were, by the regular schedule or time card, in the habit of passing each other at a certain station. New time cards were issued, changing the place of passing, to take effect on the day of the injury. One of these time cards was given to the conductor, but none to the engineer, who stopped at the new place of passing, and inquired of the conductor if a change had taken place. The conductor answered that no change was to take effect that day, and ordered the engineer to proceed. He did so, and a collision occurred, by which he was injured. The engineer was under the control of the conductor, who directed when the cars were to stop and start. It was held that the negligence of the conductor was the negligence of the master, and the defendant was liable. Chicago, M. & St. P. Ry. Co. v. Ross, 112 U. S. 377, 5 Sup. Ct. 184, is a similar case. There the train was in the habit of passing another train at a certain switch. The conductor got orders to pass at a different place on the day in question, but neglected to communicate the orders to the engineer, who attempted to run on to the usual place, and a collision resulted. It was held that the conductor was a vice principal, representing the master, who was liable.

In each of these cases the disparity between the engineer and the conductor consisted in the conductor having knowledge which the engineer did not have, but which was absolutely necessary for the safety of the engineer, and the want of which on the part of the engineer was the cause of his injury.

In the case of Baltimore & O. R. Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, there was no such disparity. The train consisted only of an engine, and was in charge of the engineer, who acted also as conductor, and the fireman was acting under his orders. The engine was running "wild," and had to keep out of the way of the regular train. The fireman was injured in a collision with that train. He knew, as well as the engineer, the time of the regular train, and that the engineer was running without orders. He knew that he could not look to the engineer or any superior officer for protection. There was no disparity of knowledge between him and any of his superiors. He knew as much about the situation as the engineer, and they each knew as much about it as any one else knew, or could be expected to know, under the circumstances. He and the engineeer had knowingly entered upon a joint venture into danger, and they stood on an equal footing. It has been supposed that this case overrules the Ross Case, but it certainly does not. In these three cases it conclusively appeared from the undisputed facts whether or not such actual disparity existed. In the Stevens Case and the Ross Case it conclusively appeared that it did exist. In the Baugh Case it conclusively appeared that it did not exist. In each of these cases it was a question of law; but ordinarily, as in the case at bar, it is a question of fact, for the jury, whether or not such actual disparity existed. It is urged that this theory would overturn the rules of the common law. It might overturn some of the blunders of modern courts, but the common law never developed any rules on this question.

For a long time after the decline of feudalism, servants were merely vassals and members of the household of the master, and even in trade the apprentice and journeyman sustained much of the same relation. These rules developed only with the development of more modern enterprises, in which the relation and responsibility of the master to the servant were very different. The first decision on the question of the liability of the master to the servant for injury caused by the negligence of another servant to be found in the English law books was in 1837,—the case of Priestley v. Fowler, 3 Mees. & W. 1,—where one servant injured another of equal grade, over whom he had no authority, the opinion in which case is in harmony with the position that I take here. The opinion states:

"But, in truth, the mere relation of the master and the servant can never imply an obligation on the part of the master to take more care of the servant than he may reasonably be expected to do of himself. He is, no doubt, bound to provide for the safety of his servant, in the course of his employment, to the best of his judgment, information, and belief. * * * In most of the cases in which danger may be incurred, if not in all, he is just as likely to be acquainted with the probability and extent of it as the master. * * * The plaintiff must have known as well as his master, and probably better, whether the van was sufficient, whether it was overloaded, and whether it was likely to carry him safely." The next decision on the question of the liability of the master for the injury of one servant by the negligence of the other was in 1841, in the case of Murray v. South Carolina R. Co., 1 McMul. 385, where the engineer of a locomotive injured the fireman by running too fast, and running over a cow. The supreme court of South Carolina came to the same conclusion as the English court. The next case is Farwell v. Boston & W. R. Co., 4 Metc. (Mass.) 49, where the engineer was injured by reason of the switch being left open through the carelessness of the switchman. Counsel attempted to distinguish this case from the last two on the ground that in those two cases the servants were in fact fellows, and worked side by side; while in this case the engineer and switchman did not, and though working for the same master, in the same general business, were in fact strangers to each other. The supreme court of Massachusetts, in answer to this, stated that this doctrine of different departments could not be carried out in principle, and would result in confusion if adopted; that all classes of servants in the same general business should be regarded as fellow servants, whose negligence each servant assumes. This case has ever since been taken as authority for the doctrine that the master is not liable for the negligence of the foreman or superior servant, resulting in injury to an inferior servant, although the question was not before the court in the case, and was not discussed. In Brown v. Maxwell, 6 Hill, 592 (decided in 1844), the plaintiff was employed by the defendant in the business of cutting stone. The foreman directed a particular stone to be taken from a large pile, and plaintiff and other workmen attempted to remove it in such a

manner as to cause the fall of another stone, by which plaintiff was injured. The court, on the authority of the Massachusetts case, held that the master was not liable for the negligence of the foreman; but it nowhere appears in what respect the foreman was negligent, or that he failed in any duty that devolved upon him peculiarly as foreman. If he participated in the particular negligence, it seems to be in performing the mere detail services of an inferior servant. From these two decisions has the doctrine grown up that the master is never liable for the negligence of the superintendent or foreman, resulting in injury to the servant, if the master uses reasonable care to furnish safe machinery and appliances, and to hire competent foremen and servants. If he has done this, he has washed his hands of all responsibility. This rule is too general and too crude to do justice, and so is the rule laid down by the dicta in the Stevens Case and the Ross Case, and followed by a number of courts which hold that such a foreman is a vice principal, regardless of the disparity or inequality between him and the inferior servant. The first rule is as unjust to the servant as the last rule is to the master.

In the case at bar, if there was between the foreman and plaintiff substantial disparity in respect to the danger by reason of exposure to which plaintiff was injured, it was disparity of skill. Whether or not such disparity existed was a question for the jury. The evidence tends to prove that such disparity did exist, and, if it did, the foreman was a vice principal, and the defendant is responsible for his negligence. Lindvall v. Woods is another case where the evidence tends strongly to prove disparity of skill. In that case the defendants were contractors, engaged in excavating a cut and filling a dump on the line of a new railroad. For this purpose the dirt from the cut was carried to the fill on dump cars, on a temporary railroad track, laid on the grade as built. This track was extended out beyond the end of the dump on trestlework built as the work progressed. The trestlework consisted of bents. The stringers were taken up from under the track on the finished portion of the dump, and extended out lengthwise of the right of way over these bents, resting on the caps of the same. Then the ties and rails were laid extending the track out over the trestle. These bents had no longitudinal support or bracing except as they were held in position by the stringers and track upon them. The loaded cars were then run out

on the track, and dumped. Plaintiff was employed as a common laborer, most of the time in filling the cars in the cut, but on the day in question was ordered to assist in shoving out two long stringers to a new bent just raised, when the trestlework gave way and fell, by reason of the want of such bracing, causing the injury complained of. It was held by this court that the case was properly dismissed; that the foreman under whom the plaintiff worked, and who was negligent in not seeing that the bents were properly braced, was a fellow servant with the plaintiff. If the plaintiff did not possess the knowledge or skill necessary to determine whether the trestle was safe, or to know and appreciate the danger to which he was being exposed by the negligence of the foreman, and could not be expected from his calling to possess such knowledge and skill, then the defendants should have been held responsible for the negligence of the foreman in not using proper care. In the case of Bergquist v. City of Minneapolis, 42 Minn. 471, 44 N. W. 530, the plaintiff was a common laborer, and had been at work three weeks in making excavations in the streets for the purpose of laying water pipes. In the prosecution of the work, it was necessary to support the walls of the ditch, which was done by placing planks perpendicularly against the sides of the ditch, and bracing them with timbers extending across the ditch from side to side. The planks were driven down as the excavation became deeper. While the plaintiff was so engaged, the curbing fell in, by reason of not being properly built and braced. All of the work was done by common laborers, and it does not appear that to determine its safety required any superior skill, either in the person performing it or in the person overseeing it. As far as appears, the plaintiff should have known and appreciated the danger to be avoided. Besides, the conditions were constantly changing; the curbing and braces might be safe one minute, and unsafe the next, so that inspection by the foreman might avail but little. If there was any disparity between the foreman and the plaintiff in that case, it was probably slight, not substantial. The burden was on the plaintiff to prove that there was substantial disparity between them, and it seems to me that he has failed to prove it, and the case was properly dismissed. In the case of Fraser v. Red River Lumber Co., 45 Minn. 235, 47 N. W. 785, the defendant was engaged in sawing and piling lumber, and employed a crew of

men, a part of whom were engaged in piling green lumber, while plaintiff and others were engaged in sorting and scaling the dry lumber, and had nothing to do with the piling. In accordance with the usual custom in piling lumber, the ends of boards were projected from the piles at certain intervals, forming steps on which to ascend and descend. In one instance the pilers negligently projected for a step a knotty and unsafe board, and subsequently, while ascending the pile, plaintiff stepped on this board, and it broke, causing him to fall, whereby he was injured. It was held that he could not recover. I think the decision is correct. It required no superior skill to ascertain the defect. He was as competent to inspect these steps and ascertain the defect as a competent foreman would be. But as the principle of actual disparity was not taken into consideration, either in the trial or review of these cases, it is likely that many of the facts bearing on such disparity have not been brought out, and whether or not I am correctly applying this principle to these cases is not here important, if the principle is just and capable of being correctly applied. In the case of Marsh v. Herman, 47 Minn. 537, 50 N. W. 611, the plaintiff and others were employed by the defendant in erecting a building; and it was necessary, as a part of their work, to erect a scaffold, which was done under the direction of the foreman. The supports of the scaffold, being too far apart, and not sufficiently nailed, gave way, and the plaintiff was injured. It was held that he could not recover. It does not appear that there was any disparity of skill between the foreman and the plaintiff, and therefore the case is correctly decided. The case does not disclose what trade or calling plaintiff exercised, or anything to show what degree of skill should have been required of him. If he was a house carpenter or brick or stone mason, he should, perhaps, as a part of his trade, possess the necessary skill to inspect the scaffold for himself, and to know and appreciate the dangers to be avoided; but if he was a common laborer, such as a hod carrier, he might not, and the case would then, perhaps, be one for the jury. In the case of Gonsior v. Minneapolis & St. L. Ry. Co., 36 Minn. 385, 31 N. W. 515, the plaintiff, a machinist's helper, had been employed about four years as "truck packer" at defendant's roundhouse. He was ordered by the foreman of the roundhouse to adjust a spring on a locomotive. He objected, saying that he had no "jack," those

kept at the place for the purpose being then in use by others. The foreman then told him he need not use a jack; to use a spring puller, and pull down the spring. He had no assistance. In attempting to do as ordered, the spring puller slipped, and two of his fingers were crushed. There was evidence to show that it required two men to do this work with safety, and that plaintiff had often been engaged in such work, but never before without assistance. It was held that the action was properly dismissed; that the foreman was a mere fellow servant of the plaintiff. My Brother Mitchell dissented, and it seems to me that he was right in doing so. The plaintiff was a common laborer, not a machinist, but he had four years' experience. It must be presumed that the defendant employed him to exercise, and was paying him for exercising, the skill acquired by his four years of experience. But whether or not he acquired or had, or should have had, the skill necessary to enable him to take care of himself, notwithstanding the foreman's negligent orders, was a question for the jury. If he did not have such skill, and could not be expected to have it, and the foreman should have had it, and should have exercised it for the plaintiff's protection, then the foreman was a vice principal. In the case of Olson v. St. Paul, M. & M. Ry. Co., 38 Minn. 117, 35 N. W. 866, the plaintiff's intestate was a section man, and, while engaged with other section men and the foreman on a handcar, was run into by a snowplow, and killed. It was held that the plaintiff could not recover. The decision is correct. While the work was dangerous, and the deceased was not able to protect himself, neither was the foreman able to protect him. The foreman had no superior knowledge or means of knowledge, but he and the deceased stood in this respect on an equal footing. Neither had the deceased a right to look for protection to any officer superior to the foreman. It was not practicable for any of his superiors to protect him, and this is an important element in the question. In the Baugh Case it was practicable for the plaintiff to be protected by his superior officers, but he knowingly put himself beyond the pale of that protection; he assumed the risk in fact, not merely as a fiction of law; so that the principles applicable to that case and the Olson Case are the same. In Brown v. Winona & St. P. R. Co., 27 Minn. 162, 6 N. W. 484, this court held that the defendant was not liable for the negligence of the road master re-

sulting in injury to a section man, who with other section men and section bosses were called from different sections, and put to work clearing a wreck under the direction of the road master. The way in which the injury occurred is not stated; so that it does not appear whether or not there was substantial disparity between the road master and the plaintiff in respect to the particular danger by reason of which the injury occurred. There is usually much disparity between the foreman and the inferior servants of such a wrecking crew. These servants are usually common laborers, possessing but little skill or experience in the unusual and temporary employment for which they are thus suddenly called together, and are wholly at the mercy of the foreman, who should possess much skill and experience. The remarks of Judge Brewer in a case of this kind (Borgman v. Omaha & St. L. Ry. Co., 41 Fed. 667) are pertinent on this point: "It was a position of responsibility, requiring, for the efficient discharge of its duties, ability, skill, and experience. While it was not a continual but only an occasional service, yet that fact does not diminish its importance to the company and to the public. It was also an isolated service. The wreck might be anywhere along the track, away from shops and stations, and where, in the nature of things, the master could be present only through him. * * * Again, the work is attended with danger. Machinery is to be employed, power of steam made use of, and all the risks that flow therefrom attend this service. There may be many kinds of work going on,—men with shovels, men operating a derrick, engineer and fireman moving an engine. All these various employés, doing their different kinds of work in the one service of restoring the wreck, were, in this case, under the control and direction of the wreck master, Mr. Smothers. * * * The work * * * was of such importance to the company and the public, and of such nature in itself, as required that the company should put in charge some man of experience, information, and character, and one for whose acts, in respect to the service, it should be held responsible." In the case of Neal v. Northern Pac. R. Co., 57 Minn. 365, 59 N. W. 312, I had occasion to touch upon the application of the principles here discussed to cases where the servant in one department is injured by a servant in another department of the same general business, and such substantial disparity exists between the servant injured

and his superiors, or some of them, whose negligence or want of proper supervision caused or contributed to his injury.

Applying the principles here advanced to the case at bar, I am of the opinion that there is sufficient evidence to sustain a verdict for plaintiff, but that the charge of the trial court is erroneous, and that for this reason the order denying a new trial should be reversed. The court charged the jury as follows: "The court is of the opinion, and so instructs you, that this Mr. Enger, the foreman, —it is conceded in these proceedings that he was the foreman of the gang,—that, from the undisputed evidence in the case, he represented the company, and the company would be responsible for his acts; that is, that he represented the company on the 8th of July, and the company would be responsible for his acts and orders on that occasion." This would make the foreman a vice principal in every instance, whether there was substantial disparity between him and the servant injured or not. This is simply the Ohio doctrine. For this error, I am of the opinion that the order appealed from should be reversed, and a new trial granted.