SWAN CARLSON v. NORTHWESTERN TELEPHONE EXCHANGE.
COMPANY.[1]

January 20, 1896.

Nos. 9563—(129).

**Master and Servant—Vice Principal.**

*Held,* following Lindvall v. Woods, 41 Minn. 212, that the decisive test whether, in any given case, an employé is to be regarded as a vice principal or a fellow servant, is not his title or rank, but the nature of the services which he performs. If he is authorized to perform duties which are the absolute duties of the master, he is, to the extent of a discharge of those duties, a vice principal.

**Same—Duty of Master.**

*Held,* further, that whenever the nature and magnitude of the master's work, whether it be that of construction or otherwise, are such that it is necessary that orders be given regulating the conduct of his employés, and directing them where to work, it is not only the right, but the absolute duty, of the master to give such orders; and in obeying such orders the employés have a right to assume that the master, in giving the orders, has exercised due care for their safety.

**Same—Negligence of Foreman.**

The defendant, in excavating a ditch, placed the work and the men employed thereon, of whom the plaintiff was one, in charge of a foreman, who had general oversight of the work. The men were subject to his orders, he had authority to employ and discharge them and to direct them what to do and where to work, and was the supreme authority there present. The foreman negligently ordered the plaintiff from the place where he had been working into the ditch at a point where he had not previously worked, which was a place of unusual danger by reason of a crack in the earth on the side of the ditch, and defects in the curbing, which danger and defects were not obvious or known to the plaintiff, who obeyed the order, and was injured by the caving in of the ditch. *Held,* that in giving the order the foreman was a vice principal, and the defendant liable for his negligence.

Appeal by defendant from an order of the district court for Hennepin county, Hicks, J., denying a motion for a new trial, after a verdict in favor of plaintiff for $1,500. Affirmed.

*Hale, Morgan & Montgomery,* for appellant.

*F. D. Larrabee* and *Stiles & Stiles,* for respondent.

[1] Reported in 65 N. W. 914.

START, C. J.   This is an action to recover damages for personal injuries sustained by the plaintiff by reason of the defendant's alleged negligence.   Verdict for the plaintiff, and the defendant appealed from an order denying its motion for a new trial.

The case comes here upon a bill of exceptions, which does not purport to contain the evidence, but which does certify that upon the trial testimony was introduced tending to prove all of the allegations of the complaint and answer respectively.   The bill of exceptions also contains a statement of certain facts which it certifies there was testimony to establish, if believed by the jury. From this statement, the allegations of the complaint, and the verdict, the following facts must be taken as established:

The plaintiff, on August 3, 1893, with some 80 other laborers employed by the defendant, a corporation, was engaged in the work of excavating a ditch along Nicollet avenue, in the city of Minneapolis, in which telephone wires were to be laid.   The work of making this ditch was in the charge of a foreman of the name of Purvey, who had control of the work and of all of the men engaged thereon, with power to employ and discharge them, and to direct them what to do and where to work.   He was the supreme authority there present, and all of the men were subject to his orders in every particular, and no one present had any authority over him.   The plaintiff had been employed on the work for about three weeks before the accident, and was not assigned to any particular portion of the work.   The soil through which the ditch was excavated consisted of sand, with a top layer, about a foot in depth, of tough, hard material, which had been filled in over the natural surface.   The excavation had been made and the ditch completed along several blocks without any curbing or artificial support of its sides, until, on the day the plaintiff was injured, it reached the street-railway track, when it became necessary to increase its depth some three or four feet.   At this point of the work, and on the morning of the day named, Purvey, the foreman, observed that a crack in the soil existed, extending from the ditch near the railway track 16 feet, describing a semicircle and ending near the ditch, the most distant part of the crack being 4 feet therefrom.   Thereupon it became necessary, in order to prevent the side or wall of the ditch caving down, to put in curbing

consisting of planks provided by the defendant, which were ample for that purpose. The work of putting the curbing in place was done by workmen other than the plaintiff, under the direction of the foreman. The curbing was in fact insufficient to hold the side of the ditch in place, and the complaint alleges that the walls and sides of the ditch were so negligently and defectively supported and braced that they were unsafe and dangerous, and a menace to the life and limb of the defendant's employés; and that the defendant knew, at the time the plaintiff was ordered, as hereinafter stated, to work in the ditch at this point, that such walls were unsafe, and were liable to cave in and injure persons there working.

The plaintiff, while the curbing was being constructed, was at work in another part of the ditch, and took no part therein, and had no knowledge of the crack in the soil at the point where the curbing was placed. When it was completed he was ordered by the foreman to go into the ditch where the curbing was placed, and clean out the loose sand at the bottom, and, ignorant of the true character of the curbing, and not knowing that the place was an unsafe one, he obeyed the order, and commenced the work as directed, when a piece of earth constituting the side of the ditch inside of the crack mentioned settled down by a sliding movement under the curbing into the bottom of the ditch, catching the plaintiff, and breaking his foot and ankle. The foreman did not caution or advise the plaintiff as to the unsafe condition of the ditch at the place he was ordered into, but the plaintiff saw the curbing, and knew that it was placed there to prevent the ditch from caving in.

There were no exceptions taken upon the trial of the action save those relating to the giving and refusing to give certain instructions to the jury by the trial court, and the assignments of error are limited to such exceptions.

1. The defendant's counsel, by their assignments of error 2 and 3, raise and discuss the question whether, upon the facts as they appear from the record, the plaintiff must be held to have assumed the risk of working in the ditch in the condition in which it was.

In performing the duties required of him, the plaintiff was bound to take notice of the ordinary operation of familiar natural laws,

and govern himself accordingly; and he must be held to have assumed the risk of such defects and dangers in the place assigned to him in which to work as were open and obvious, and must have been known and appreciated by him. Smith v. Tromanhauser, supra, p. 98, 65 N. W. 144. But the defendant's special requests for instructions to the jury upon which its assignments of error 2 and 3 are predicated were properly refused, for the reason that they assume as a matter of law that the defects and dangers of the place into which the plaintiff was ordered were obvious, and therefore presumed to have been known, appreciated, and assumed by him. Error cannot be presumed, and, in the absence of the evidence from the record, it must be assumed that the question whether the dangers and defects were obvious was, under the evidence, a question of fact for the jury. It was clearly so if, as the record states, the evidence tended to establish the allegations of the complaint and the facts recited in the bill of exceptions.

2. Assignments of error 1, 4, 5, 6, 9, and 10 present the question whether the foreman, Purvey, in ordering the plaintiff into that part of the ditch where the curbing was placed, acted as the representative of the defendant, and in its place, or as a fellow servant of the plaintiff.

The trial court instructed the jury that in the work of excavating and constructing the ditch, including the curbing, the foreman was the fellow servant of the plaintiff, and that the defendant was not liable for any neglect of the foreman in this respect. But the jury were further instructed that it was the duty of the defendant to use ordinary care to protect the plaintiff from unusual risk, and that whatever the foreman did or failed to do in this respect was the act or omission of the defendant, and, if he failed to exercise such care, his negligence in the premises was that of the defendant; that unless the foreman knew there was unusual danger to the plaintiff in working in the place assigned him,—something which would not occur in the ordinary course of digging ditches,—the plaintiff could not recover; but, if the foreman did know, when he ordered the plaintiff into the ditch, that its walls were unsafe, dangerous, and liable to cave in and injure the plaintiff, and did not warn him, the defendant would be liable. These instructions were substantially repeated one or

more times, and the defendant's exceptions thereto were in these words: "We except to those portions of the charge hereinafter stated separately, that is to say, to that portion which, in effect, stated that the master was bound to use ordinary care and diligence to protect the servant from unnecessary risks, and that Purvey was vice principal for that purpose. It is that feature there, making him vice principal." Also that, "if Purvey knew of unusual danger, and did not warn the plaintiff, defendant is liable. I want to get at the same purpose,—that Purvey was vice principal."

The defendant's first contention is that the court erred in giving the instructions, because the record fails to show that the foreman knew of the unsafe condition of the ditch, or that the order to work in the ditch at the point where the accident occurred was the proximate cause of the plaintiff's injury. If it be true that the evidence on the trial did not establish these facts, the question cannot be here reviewed, for two reasons: The record does not contain the evidence, and the exceptions do not raise any question as to the sufficiency of the evidence. It is manifest on the face of the exceptions that they were intended to and did raise only the question as to the correctness of the instruction that the foreman in giving the order was acting as a vice principal. That it was not correct in this particular is the defendant's second and principal contention.

This brings us to the important, and practically the only real, question presented by the record for our decision, viz.: Was the foreman discharging a duty which rested upon the defendant as master, when, under the particular circumstances and conditions of this case, he ordered the plaintiff into the ditch at the point where the accident occurred? If he was, the instructions of the court excepted to were correct; if he was not, the giving of them was reversible error. We answer the question in the affirmative.

The authorities upon the question when and under what circumstances an employé becomes, as to his fellow servants in a common employment, the representative of the master, are involved in a bewildering maze of inconsistency and injustice. In the case of Lindvall v. Woods, 41 Minn. 212, 42 N. W. 1020, this court had the question under consideration, and as a result of a review of its previous decisions, and upon principle, reached the

conclusion: "That it is not the rank of the employé, or his authority over other employés, but the nature of the duty or service which he performs, that is decisive; that, whenever a master delegates to another the performance of a duty to his servant which rests upon himself as an absolute duty, he is liable for the manner in which that duty is performed by the middleman whom he has selected as his agent, and to the extent of a discharge of those duties by the middleman, however high or low his rank, or however great or small his authority over other employés, he stands in the place of the master, but as to all other matters he is a mere co-servant. It follows that the same person may occupy a dual capacity of vice principal as to some matters and of fellow servant as to others." We adhere to this conclusion. It is correct in principle, and furnishes a just and rational test for determining whether the act or default of an employé in a given case is that of a fellow servant or a vice principal. The decisive test is not the conventional title, grade, or rank given to the employé, but the character of what he is authorized to and does do. In the application of this rule or test to the facts of particular cases, wrong and inequitable conclusions may have been reached; not, however, from the principle of the rule, but by taking too limited a view of the personal or absolute duties of the master in such cases. Applying the rule to the facts of this case, it is clear upon principle that the foreman, Purvey, in ordering the plaintiff into the ditch at the point of the accident, must be regarded as a vice principal.

While the employé assumes for himself the ordinary and obvious dangers of the work or business in which he engages, yet the master is bound to use ordinary care to warn and protect the employé from unusual and unnecessary dangers and risks. If the nature and magnitude of the master's work, whether it be that of construction or otherwise, and the number of men engaged in its execution, are such that the exercise of ordinary care for the safety and protection of the workmen from unusual and unnecessary dangers requires that they be given reasonable orders, and that they be not ordered from one part of the work to another, without warning, into places of unusual danger and risks, which are not obvious to the

63 M.—28

senses and known to them, but which might be ascertained by the master by a proper inspection, the absolute duty rests upon the master to give such reasonable orders. Considerations of justice and a sound public policy impose this duty upon the master as such, which he cannot delegate so as to relieve himself from the consequences of a negligent discharge of it. Where a large number of men are employed upon the same work, it is essential that reasonable orders, regulating their conduct, and assigning to them proper places in which to work, should be given. It is the duty and the right of the master to give orders and direct the places where his servants shall work. Their duty is instant and absolute obedience, unless it be obvious to them that such obedience will expose them to unusual dangers. Dispatch, discipline, and the safety of person and property in the execution of work imperatively require that the master should order and the servant obey. It would be practically impossible to carry on a work of any magnitude on any other basis. A workman, when ordered from one part of the work to another, cannot be allowed to stop, examine, and experiment for himself, in order to ascertain if the place assigned to him is a safe one; and therefore, in obeying the order, while he assumes obvious and ordinary risks, he has a right to rely upon a faithful discharge of the master's duty to use ordinary care to warn and protect him against unusual dangers. Any rule or doctrine which deprives the workman of this right and protection when the master delegates the power and duty of giving such orders to a subordinate, no matter how high or low his rank or grade, is unsupported by reason, violates all considerations of justice, and is not supported by the weight of authority.

In the present case the foreman, Purvey, was the supreme authority in charge of the work, with power to give all orders directing the places where the employés should work, and all reasonable and necessary orders to secure their safety, which orders the plaintiff was bound to obey and did obey, and he was injured by reason of the negligence of the foreman in knowingly ordering him into a place of unusual danger without warning him of the risks incurred in obeying the order. In giving such order, under the special facts of this case, the foreman represented the master, the defendant.

3. Assignments of error 7 and 8 rest upon a misconception of the trial court's instruction. The instruction complained of was "that the accident having occurred is prima facie evidence of the fact that it was unsafe"; that is, the curbing. If the instruction referred to the curbing, and cannot fairly be construed as an instruction to the effect that the happening of the accident was prima facie evidence of the defendant's negligence, it was correct. That the instruction referred to the curbing only is manifest from the language used, and it is apparent that it was so understood at the time, for the defendant's only exception to the giving of it is in these words: "To that portion of the charge, in substance, that the evidence tended to show that the curbing was unsafe."

Order affirmed.

COLLINS, J. (dissenting). I think the case should be governed by that of Loughlin v. State, 105 N. Y. 159, 11 N. E. 371, and therefore dissent.

CANTY, J. I concur in the result arrived at in the foregoing opinion, but not in the reasons given for that result.

The majority seem to approve of that line of decisions which hold that the master is only liable for his negligence in failing to provide a competent foreman, safe instrumentalities, and a safe place in which to work; and that, having done this, his duty to the inferior servant is performed, and he is not liable for the negligence of the foreman resulting in injury to such inferior servant. But while they seem to approve of this line of decisions, they do not follow them, for under these decisions the defendant cannot be held liable in such a case as this for failing to furnish the plaintiff a safe place in which to work. That rule does not apply to a place rendered unsafe solely by the progress of the very work in which the servant is engaged. Olson v. McMullen, 34 Minn. 94, 24 N. W. 318; Pederson v. City of Rushford, 41 Minn. 289, 42 N. W. 1063; Loughlin v. State, 105 N. Y. 159, 11 N. E. 371. No class of cases hold it to be the absolute duty of the master to furnish a safe place for his servant to work in, when the place is made dangerous, and its character is continually changing, by reason of the progress of the work in which the servant is engaged. There

is a line of decisions which hold that the mere fact that the foreman has authority to hire, discharge, direct, and oversee inferior servants constitutes him a vice principal as to them. But the majority do not profess to follow this line of decisions, and I do not understand what guiding principle the majority lay down for determining when such a foreman is a vice principal for whose negligence the master is liable. Of course, if this were a case of negligence in failing to furnish a safe place for the servant to work in, within the meaning of the cases first above referred to, the foreman charged with the duty of furnishing that place would, as a question of law, be a vice principal for whose negligence the master is liable. But it is not such a case, and in a case of this kind it seems to me that the question when such a foreman is such a vice principal, is ordinarily a question of fact to be determined on other principles.

The question is: As respects the particular danger, is the foreman better able to take care of the inferior servant than the inferior servant is to take care of himself, and how much better? If there is substantial disparity between the foreman and the inferior servant in this respect, then the foreman is a vice principal. For the test by which to determine when a foreman having authority to direct and oversee the inferior servants under him is as to them a vice principal, I still adhere to the principles laid down in my dissenting opinion in Blomquist v. Railway Co., 60 Minn. 426, 430, 62 N. W. 818, 821, where I have considered the question at some length. I am of the opinion that it depends on the amount of actual disparity between the foreman and the inferior servant injured,—disparity in respect to the particular danger by reason of exposure to which he was injured. In this case it would be disparity of knowledge as to the existence of the semicircular crack in the ground. Disparity of knowledge exists where the foreman has or should have knowledge which the inferior servant neither has nor can be expected to have, the want of which knowledge caused or contributed to his injury.

The bill of exceptions shows that such disparity did exist. It is stated that there is evidence "sufficient to show the following state of facts: * * * On the morning of the day the plaintiff was injured, the foreman of the crew, Mr. Purvey, observed that a crack in the

soil existed, extending from the ditch near the railroad track about sixteen feet, describing a semicircle and ending near the ditch; the most distant part of the crack being about four feet from the ditch." The bill of exceptions then proceeds to state that the foreman procured some of the fellow servants of plaintiff to stand 2-inch planks on end, 10 feet apart, on each side of the ditch, and place horizontally behind these, along each side of the ditch, about a foot below the surface, a single plank, which was held in place by the perpendicular planks being pressed against it and held in position by crosspieces or braces extending from one side of the ditch to the other; that some of the sand in the sides of the ditch had fallen down into it. It is then stated: "This loose sand obstructed the laying of the piping, and the plaintiff, who had been employed in another part of the ditch, and had taken no part in the construction of the curbing, and knew nothing of the crack in the soil at the street-railway track, was ordered by the foreman, Purvey, to leave the place where he had been working, and go down into the ditch near the street-railway track, where this curbing had been put in, and clean out the ditch by removing the loose sand that had settled down into the bottom, so that the piping could be laid; and the plaintiff did so, and was working in this ditch, with several other men, in clearing it out, the plaintiff standing about ten feet from the car track, when a piece of soil and sand constituting the side of the ditch inside of said crack * * * settled down by a sliding movement under the curbing into the bottom of the ditch, catching the plaintiff as he stood there working, doing him the injury complained of." It also appears from the bill of exceptions that for a distance of 30 feet or more back from the railway track the ditch was about 7 or 8 feet deep. Then we must presume that, when this plaintiff was standing in the bottom of this ditch engaged in his work, he could not see the surface of the ground, and while so engaged had no reasonable opportunity to discover the semicircular crack in that surface.

The foreman had knowledge of the existence of the danger by reason of exposure to which the plaintiff was injured, and the plaintiff neither had, nor could be expected to have, any knowledge of the same. Then I am of the opinion that as to this danger the foreman was a vice principal, for whose negligence in failing to

inform the plaintiff of his danger, or make provision for his safety, the master is liable. There clearly was, as to this particular danger, sufficient disparity of knowledge between the plaintiff and the foreman to constitute the foreman a vice principal. The existence of this disparity, as I have already stated, is a question of fact for the jury, and the burden of proving its existence is on the plaintiff.

The jury should find, in the first place, whether or not the disparity existed which would constitute the foreman a vice principal as to the particular danger; and if it did exist, then, in the next place, they should find whether he was negligent in discharging his duty as such vice principal. However, the judge did not leave it to the jury to determine as a question of fact whether or not the foreman was such a vice principal, but charged them, as a question of law, that he was. But the bill of exceptions does not state that there was any evidence which in any manner contradicts the facts above recited. If there was no such evidence, then it conclusively appears that such disparity of knowledge did exist, and that, therefore, the foreman was a vice principal. Then it was not error to charge, as a question of law, that, as respects this danger, the foreman was a vice principal for whose negligence the defendant was liable.

In this respect this case is similar to the cases of Little Miami R. Co. v. Stevens, 20 Ohio, 415, and Chicago, M. & St. P. R. Co. v. Ross, 112 U. S. 377, 5 Sup. Ct. 184. In those cases, as in this, the disparity of knowledge was, on the evidence, so clear and conclusive, that the court had a right, as a question of law, to charge that the foreman was, as respects the particular danger, a vice principal. In the Stevens Case and in the Ross Case the conductor of the train received information of the movements of another train, of which the engineer under him had no knowledge. The conductor negligently failed to communicate this information to the engineer, or use it for his protection, by reason of which there was a collision, and the engineer was injured. In my dissenting opinion in the Blomquist Case I refer to these cases, and say: [2] "In each of these cases the disparity between the engineer and the

2 60 Minn., at page 434, 62 N. W., at page 822.

conductor consisted in the conductor having knowledge which the engineer did not have, but which was absolutely necessary for the safety of the engineer, and the want of which on the part of the engineer was the cause of his injury." I then proceeded to show that from the evidence in each case the existence of this disparity was uncontradicted and conclusive, so that, as a question of law, the conductor was properly held to be a vice principal, for whose negligence the master was liable.

The Blomquist Case was not such a case. There it was a question of disparity of skill, and whether or not such disparity existed was neither undisputed nor clear and conclusive; so that, in my opinion, the question of whether the foreman was a vice principal was not for the court, but a question of fact for the jury under proper instructions. Such would be the disparity here as respects defects in the curbing. The inferior servant here could see the curbing, and examine its construction, as well as the foreman; but whether he had or should have had skill enough to know and appreciate that it was defective and insufficient was not clear or conclusive from the evidence, and was a question of fact for the jury. But this question is not before us, as the judge charged the jury as follows: "I simply say to you that in the placing of these braces there Purvey did not act as the representative of the defendant, but was a fellow workman." The court further charged the jury: "I say to you, if he knew the place was a dangerous place at the time he ordered plaintiff into said ditch, and that said walls were unsafe, dangerous, and liable to cave in and injure plaintiff,—if Purvey knew this fact, he acting for the defendant,— the defendant would be responsible for whatever he may have done." The question before us is whether this latter part of the charge is correct, and, on the evidence, it is my opinion that it is.

Since the above was written, I have read the opinion of Mr. Justice MITCHELL in this case, in which he condemns my position as a dangerous novelty. It is evident from what he says that its novelty has made it a matter of so much suspicion to him that he has given it but the most superficial examination. He seems to think that I have seized upon the mere fact that the foreman happened to know that the curbing was unsafe as the only reason why

he is a vice principal, and that, if he did not happen to know it, he would not be a vice principal. The most casual reading of what I have said in this and the Blomquist Case ought to show that I take no such position. I will quote from what I said in that case: [3] "Disparity of knowledge is where the foreman has or *should have* knowledge which the inferior servant neither has *nor can be expected to have*." It is not merely what the foreman knows, but what he ought to know, what he is negligent in not knowing. In this case the foreman's actual knowledge of the crack in the side of the ditch is simply an additional circumstance which makes the disparity between him and the plaintiff so clear and conclusive that it should be held as a question of law that sufficient disparity existed to constitute the foreman a vice principal. But the jury might have found the existence of such disparity from the other circumstances of the case, even if the foreman never knew of the existence of the crack. They might have found that under the circumstances of the case the foreman, in the exercise of reasonable care in performing his duties as foreman, should have known of its existence, and of the dangers surrounding the plaintiff by reason of this and the insufficient character of the curbing, and that, under the circumstances, he could not be expected to know of those dangers.

My brother MITCHELL persists in still further misunderstanding my position, and in claiming that I propose to make the master liable for the negligent acts and omissions of the foreman where he owes no duty as foreman to the inferior servant. It may well happen that an inferior servant is injured by want of knowledge which the foreman happens to have. So might he be injured by the want of knowledge which another inferior servant happens to have. The question is, is it knowledge which the foreman, as such, should have, and which the inferior servant injured cannot be expected to have? In the Blomquist Case I applied this principle to every type of case found in the books to which, if sound, it should be applicable, and found no inherent difficulties in its practicable application. From the discussion of these principles in connection with those cases, no one ought to be misled into supposing that I

[3] 60 Minn. at page 433, 62 N. W. at page 822.

claimed that the acts or omissions of the foreman, except where he owed a duty as such foreman to the inferior servant, came within the rule. He must not only, as foreman, owe a duty to the inferior servant, but there must be substantial disparity between them, to make that duty the duty of the master. One class of cases hold that, outside of a few well-defined exceptions, the duties which the foreman owes to the inferior servant are not duties for the performance of which the master is responsible. Another class of cases hold that the master is always responsible for the performance of these duties. I hold that neither rule is correct, but that the true rule lies on a middle ground between these two rules, and that beyond the exceptions specified in the first rule the master is responsible for the performance of such duties only when such disparity exists between the foreman and the inferior servant. The majority profess to hold that the first rule is correct. The dangerous novelty in my case does not seem to consist in my departure from well-established landmarks (as the majority are equally guilty of that), but in my having taken a compass along with me on that departure. And, whether my theories are sound or unsound, the members of this court who leave the bench and bar of this state to hunt for the law between this case and the Blomquist Case on the one hand and the Lindvall Case on the other hand, ought not to be hypercritical as to my theories.

MITCHELL, J. (concurring). My only excuse for adding anything to what has been so well said by the CHIEF JUSTICE is that if, as some suppose, this court has shifted ground, and departed from its former rulings, or if, as is suggested, there is any doubt as to the guiding principles adopted by the court, it is due to the profession that it be made as clear as possible what position the court occupies. It is needless to say that the doctrine of "fellow servant," and particularly that phase of it presented by this case, to wit, when a superior employé bears to inferior employés under him the relation of vice principal and when that of fellow servant, is one of the most difficult questions in the law.

The principle which this court has always announced as the test is that it is not the mere rank or grade of the superior employé, but the nature of the duty or service which he was performing,

which determines the question; that, whenever a master delegates to another the performance of a duty which he owes absolutely to his servants, or which would fall within the line of his duty as master if personally present, then, in the performance of such acts, such other person would be, as to other servants, a vice principal, and not a fellow servant. Whether we have always correctly applied this test to the facts, is another question. For example, in hiring and discharging workmen the foreman in the present case would represent the master, and his negligence in the premises would be chargeable to the master. So also in the matter of selecting or inspecting implements and other instrumentalities for the performance of the work, assuming that this duty had been delegated to him. And where, as in this case, he had been given entire control of the work, and of all the workmen engaged in it, with absolute and supreme authority to give them orders how to do the work and where to work, I think that, on exactly the same principle, in giving these orders, which the workmen were bound to obey, he represented the master, and was performing a duty which would have devolved on the master if personally present. Shearman & R. Neg. (4th Ed.) § 233.

I am not able to concur in the views of Justice CANTY that the test is the parity or disparity of skill or knowledge between the superior and the inferior employés. Aside from its being a novelty in the law, which is always dangerous, I do not think it rests on any sound principle. The parity or disparity of skill or knowledge may be very material upon the questions of negligence and contributory negligence, and I can see how the degree of skill or knowledge required for the performance of a particular duty may, in some cases, have an important bearing upon the question whether that duty was an absolute one of the master or the mere act of a fellow servant; but I fail to see how it is at all controlling as determinative of the question whether, in performing a given act, the superior employé did or did not represent the master. Reduced to a concrete form, and applied to the facts of this case, the proposition seems to be about this: As the foreman knew that the curbing was unsafe, therefore in giving the order to plaintiff he was a vice principal, but if he had not known that the curbing was unsafe, then the order would have been merely the act of a fellow servant.