CHARLES J. STAHL v. CITY OF DULUTH.[1]

January 26, 1898.

Nos. 10,872—(232).

Injury to Employee—Negligence—Vice Principal—Verdict Sustained by Evidence.

Evidence considered, and *held*, that the defendant's foreman was a vice principal as to his acts of negligence relied on for a recovery in this case, and, further, that the verdict is sustained by the evidence.

Same—Hypothetical Questions.

*Held*, that the trial court did not err in overruling defendant's objections to certain hypothetical questions, nor in refusing to strike out the answer thereto.

Examination of Witness—Testimony from Stenographic Notes.

*Held*, that it was not reversible error for the trial court to permit a stenographer to testify from her shorthand notes as to the testimony of witnesses on a former proceeding, without formal and direct proof being made that she was unable, without the aid of her notes, to recall their testimony.

Appeal by defendant from an order of the district court for St. Louis county, Ensign, J., denying its motion for judgment notwithstanding the verdict or for a new trial, after a verdict for $2,500, in favor of plaintiff as administrator of the estate of Erick Engstrom, deceased. Affirmed.

*Draper, Davis & Hollister*, for appellant.

*John Jenswold, Jr.*, for respondent.

START, C. J.

The plaintiff's intestate, Erick Engstrom, was killed by an explosion of dynamite while at work for the defendant in the excavation of a ditch for its water mains. This action was brought to recover

[1] Reported in 74 N. W. 143.

the damages sustained by his widow and child by reason of his death, which was caused by the alleged negligence of the defendant. Verdict for the plaintiff for $2,500, and the defendant appealed from an order denying its alternative motion for judgment or a new trial.

1. The work in question was, at the time of the accident, in the charge of Emil Engle, whose negligence, as plaintiff claims, caused Engstrom's death. The defendant claims that Engle was not a vice principal, but a fellow servant, as to his acts of alleged negligence relied on for a recovery in this case. This claim is stated by its counsel thus: "Engle was a fellow servant with the deceased in regard to the very thing which is alleged to be dangerous; that is, the removal of the rock at the southeast corner of the trench." The argument on this point seems to rest upon a misconception as to the particular act of negligence on the part of Engle complained of. This is not a case where the right to recover is based upon the fact that the place furnished by the defendant in which its employees were to work became unsafe during the progress of the work by the negligence of the employees, including the foreman. See Bergquist v. City, 42 Minn. 471, 44 N. W. 530. On the contrary, the alleged negligence which is the gist of this action is that the deceased, an ordinary laborer, was by Engle, the foreman, negligently ordered from one part of the work to another, and there directed to pick and remove the loose rock at and around a hole in which there was an unexploded charge of dynamite, without first exercising ordinary care, and making a reasonable examination to ascertain the existence of such unexploded charge, and without warning him of the latent danger.

The admitted facts, together with the undisputed evidence, show that, if Engle was thus negligent, it was the negligence of a vice principal. They show: That the defendant was engaged at the time in the work of digging trenches for its waterworks, which work involved the excavation of rock by drilling, blasting, and removing the same. That the explosive used was dynamite, a dangerous agency, requiring care in its use. That the work was laid out by the defendant's board of public works, individual members of which visited the work twice a week, but the execution of the work was committed to Engle, the foreman, who had the entire

charge of the work and of the men, who were divided into drilling gangs, blasters, derrick men, and pickers. That Engstrom, the deceased, belonged to the last-named class, and was employed, as a common laborer, to pick and shovel such earth and rock as could be handled in that way. That Engle had authority to give all orders to all of the men as to how and where they should work, and to discharge them. His authority in these respects was unrestricted. That the character of the work was such that it was the duty of the defendant to exercise ordinary care not to expose the workmen to unnecessary risks, unknown to them, but which it might discover and remedy by reasonable care on its part. This was its personal duty, which it delegated to Engle, and if he negligently discharged the duty, it was its own negligence. Carlson v. Northwestern, 63 Minn. 428, 65 N. W. 914.

2. The defendant further claims that the verdict is not sustained by the evidence, in that there was no evidence sufficient to warrant a finding that Engle was negligent, as claimed or otherwise. No claim is made of any want of care on the part of Engstrom in the premises. There was evidence tending to show that, about a week prior to the day of the accident, some six or eight holes had been drilled in the rock in the east end of the trench, which the blasters loaded with dynamite, connected with wires, and fired with a battery; that, where several blasts are thus set off at once, it sometimes happens that not all of them are exploded, but, as there is only one sound of an explosion, it is not possible, by the report, to determine whether or not all the charges are exploded; that a person familiar with the use and effects of dynamite in blasting can ordinarily ascertain whether any of the blasts in such a case remain unexploded, by an examination of the hole and of the surface indications of the rock at and around it.

It was claimed on the trial by the plaintiff that the accident happened in the morning, about half an hour after the work for the day had been commenced; that the deceased was working in the middle of the trench, and was directed by Engle to go to the east end of it, there to loosen with his pick some rock, so that it could be removed; that Engle went with him, and indicated the place where he should work, near the southeast corner of the trench,

where a hole had been drilled in the rock, and loaded with dynamite, but which failed to explode when the blasts we have referred to were set off; that the deceased complied with the foreman's direction, and, when he struck the second blow with his pick, the charge of dynamite exploded, killing him; that the condition of the rock at this point, at the time the deceased commenced working there, was such that Engle, by the exercise of ordinary care, might have learned that there was an unexploded charge of dynamite there; and that he ought to have known it, and warned the deceased of the danger thereof.

The defendant controverted these claims, and maintained that the deceased did not set off a charge of dynamite in a hole which had been loaded and failed to explode, but that he was killed by striking a piece of dynamite which had been left in the loose dirt or clay near the rock, by accident or design, by some person for whose act the defendant was not responsible, and, further, that the condition of the rock where deceased was directed to work was not such as to indicate any unexploded charge of dynamite there.

The trial court submitted each of these issues to the jury. As to the first its instruction was:

"If the jury find that the explosion was caused by Engstrom striking some explosive substance in the clay or dirt upon or near the rock, instead of, as plaintiff alleges, in a hole which had been drilled and charged, the verdict of the jury should be for the defendant."

As to the second the jury were instructed:

"Unless the jury find that Engle, in the exercise of ordinary care, skill and caution, having reference to the dangers to be apprehended, had reason to suspect that there might be danger in working where deceased was directed to work, plaintiff cannot recover."

These instructions are clear and concise, and the jury must have understood exactly what the issues were, and they found for the plaintiff upon each of them, and the trial court approved the finding. The defendant, however, claims that there is no evidence to support the verdict as to either issue. The evidence is so voluminous and conflicting that it is impractical to here quote or analyze

it, and we content ourselves with stating in a general way the conclusion reached from a consideration of the record.

There is ample evidence to sustain the finding of the jury to the effect that the explosion which killed Engstrom was not caused by his striking a stray piece of dynamite which had been left, by accident or otherwise, in the clay or dirt near the rock, but that it was caused by his striking the rock with his pick, and setting off an unexploded charge of dynamite in a hole therein, substantially as claimed by the plaintiff. It is true that Engle testified that the deceased struck in the dirt where no hole had been drilled or loaded, and one other witness testified that he was picking in earth at the time; but the testimony of a number of other witnesses as to the sound of the explosion, its effects, the position in which Engstrom was found, the condition of the ditch at this point after the explosion, the rocks that were thrown out and broken, and the fresh marks thereon, justified the jury in finding that the eyewitnesses were mistaken as to just the precise spot that Engstrom struck. The credibility of the witnesses, and the weight to be given to the physical facts and other circumstances connected with the explosion to which they testified, were questions for the jury.

The evidence to support the finding of the jury on the second issue is not as satisfactory as it is upon the first, but it is sufficient to sustain the verdict. There was evidence on the part of the plaintiff tending to show that the foreman directed a hole to be drilled and loaded in the southeast corner of the trench, and that it was one of the six or eight in the east end of the trench which were connected by wire and set off together; that the derrick men took out all the rock broken and loosened by the explosion, but could not get clear to the bottom at the east end of the trench, because the rock lay there solid; and that there was a bench of rock, in a half-circular shape, left undisturbed, after the blasts were set off, in the southeast corner of the ditch, where Engstrom was killed, and which so remained until the time of the accident. If this bench of rock existed as claimed, and it in fact remained in place until the time Engle set the deceased at work at that point, there is no trouble in concluding, from the expert evidence, that this bench was a danger signal, and would indicate to a person familiar

with the use and effects of dynamite in blasting the probability that the dynamite in the hole had not exploded, and that it was necessary to make a thorough examination to ascertain whether or not such was the case, and that Engle was negligent in not observing the danger signal, and warning Engstrom of the latent dangers of the place in which he required him to work.

But the defendant claims that there is no evidence that there was any such bench of rock at the point of the accident at the time it occurred. One of the plaintiff's witnesses testified to seeing it there on the morning of the accident, but his cross-examination indicates that he was mistaken; but he and several other witnesses testified to seeing it there at different times during the week, after the blasts were set off, and after all of the loose rock in the east end of the ditch had been removed, and up to one or two days before the accident. It is, however, urged that, if this bench ever existed, there is no presumption that it remained there, or that it was not thereafter, and before the accident, removed. Conceding this, it does not follow that there was no competent evidence that it did remain; for there is evidence tending to show that no further work was done in this end of the trench, after the loose rock was removed, until the morning of the accident, when Engstrom commenced his work there, and, further, that this same bench of rock was broken and thrown several feet to the northeast by the same explosion that killed Engstrom. There were other circumstances testified to which, with the evidence referred to, would justify the jury, if they credited the witness, in concluding that this bench of rock or danger signal existed at the place and at the time where and when Engstrom was set at work. The verdict is sustained by the evidence.

3. The remaining assignments of error relate to the rulings of the trial court on questions as to the admissibility of evidence, all of which have been considered, and the conclusion reached that only those hereinafter referred to are of sufficient merit to justify any discussion of them.

Assignments eleven and fourteen are to the effect that the court erred in overruling the hypothetical questions put to the plaintiff's expert witnesses, Haley and Dykins, respectively. The question to

the first-named witness, after reciting a series of assumed facts, concluded thus:

"Now, Mr. Haley, assuming these to be the facts, and assuming these holes to have all been loaded as I explained, and the attempt made to fire them, what should that condition indicate to an expert in blasting,—a man who was familiar with the use and effect of dynamite as an explosive?"

A similar question to Dykins concluded as follows:

"What, in your judgment, Mr. Dykins, should an expert who knows that those holes had been drilled, and who knows that they were loaded with dynamite, but who doesn't know whether or not they had all exploded, except as he views the broken rocks from the top,—what should he conclude, in reference to that corner, as to whether or not there was dynamite therein or not?"

The objection to this last question was in these words:

"Objected to for the reason that there is no sufficient foundation for it; for the reason, also, that it embraces assumptions upon which there is no evidence. Objected to as incompetent, irrelevant, and immaterial, and no proper foundation laid for the question, and assuming facts not proven in the case."

The objection to the first question, while not in the same words, was to the same effect. The objection here urged is that the question called for the opinion of an expert as to what another expert should have concluded from an assumed state of facts; that it was not competent to prove by one expert what another expert should have concluded, as it leaves the witness to form his own conclusions as to what would constitute an expert, and give his opinion as to the conclusion which such an expert as he had in mind would draw from the facts. This is a technical construction of the questions, and it is apparent, from the answers of the witnesses, that they understood the question as calling for their opinion whether the condition of the rock indicated danger. The answer of the first was:

"It would indicate to an expert that he didn't get that hole far enough to break, or else that the hole had missed, providing the ground was solid."

It is to be noted that the term "expert" was defined in the question as "a man who was familiar with the use and effect of dynamite as an explosive." The answer of the other witness was:

"He should have it examined thoroughly, and satisfy himself whether there was dynamite in it or not, as the indications would point that the hole hadn't gone off."

If the questions were technically objectionable, as they seem to have been, it is apparent from the answers, that the defendant was not prejudiced thereby.

But, be this as it may, the fact remains that the objections to the questions here urged and relied upon were not made in the court below. If these objections had been stated at the trial, the form of the questions could easily have been changed, so as to obviate the objections. We have repeatedly held that objections to evidence must be so definitely stated that the court may intelligently rule upon them, and the opposite party may, if the case will admit of it, remove them. The objections in this case are not sufficient to raise the questions here urged in support of the assignments of error.

The sixteenth assignment of error is directed to the refusal of the court to strike from the record the testimony of the witness Haley in answer to the hypothetical question, for the reason that his cross-examination showed that his answer was based upon matters not assumed in the question. This claim is based largely upon the following question and answer:

"And when you answered Mr. Jenswold's question as you did, you assumed that the foreman knew that a hole had been drilled in the southeast corner, which had failed to explode? A. Yes."

It was proper for the witness to base his answer upon the assumption that the foreman knew that the hole had been drilled and loaded, as there was evidence tending to prove it, but not upon the assumption that he also knew that the hole had failed to explode, for the very object of the question and answer was to furnish evidence to prove that the foreman ought to have known that there was an unexploded charge in the hole. It is apparent, from his evidence, that the witness did not understand the full import of the

question asked on cross-examination. A reference to his answer to the hypothetical question, which we have quoted, clearly shows that his answer thereto was not based upon the assumption that the foreman knew that the hole had failed to explode. The motion to strike the testimony from the record was properly denied.

The plaintiff, for the purpose of showing what certain of defendant's witnesses testified to at the coroner's inquest held to inquire as to the cause of Engstrom's death, called a stenographer who took the testimony at the inquest, and she was permitted to state, by reference to her notes, what such witnesses testified to. This is assigned as error, because it was not first shown that she then had no recollection of the testimony taken before the coroner independent of her notes. A stenographer, called to testify as to what was testified to by a witness on a former examination, may use his notes to refresh his memory. State v. George, 60 Minn. 503, 63 N. W. 100. He may do so although, independent of such notes, he has no recollection of the testimony. State v. Smith, 99 Iowa, 26, 68 N. W. 428.

The general rule as to an ordinary memorandum is that it is not admissible in evidence, and the witness cannot refer to it, unless it appears that without it he cannot speak from memory as to the facts; for it is only in such a case that the witness needs the aid of the memorandum. This is the reason for the rule, and all that is necessary in this particular to be shown to permit a resort to the memorandum is that it must appear to the satisfaction of the court that the witness requires the assistance of the memorandum. There is no inflexible rule as to how such fact shall be made to appear to the court. The stenographer in this case was shown to be an experienced and competent one, who testified that she correctly took the evidence at the inquest in shorthand notes, from which she testified, except as to one witness, where proof of loss of the notes and the correctness of the translation were made.

Now, the trial court had a right to take judicial notice of the manner in which stenographers take testimony; that they do so mechanically, and do not and cannot charge their memories with the testimony; that, the instant an item of testimony is put down, it must be dismissed from their minds, to enable them to get the next one down. The trial court was justified, from the evidence, in

concluding that the witness could not give the evidence taken at the inquest independent of her notes, although the formal question whether or not she could do so was not asked and answered. It was not reversible error to permit her to testify from her notes.

Order affirmed.

CANTY, J. (dissenting).

I cannot concur in the first subdivision of the foregoing opinion. Appellant contends that as a question of law, the foreman Engle was not a vice principal, for whose negligence defendant is liable, and asked the trial court so to charge the jury. In my opinion, that contention cannot be sustained, because it was a question of fact for the jury whether or not Engle was a vice principal.

But that is not all. The judge charged the jury that Engle was bound to exercise reasonable care in providing for deceased a safe place in which to work, and that if Engle was negligent in this respect, his negligence was the negligence of defendant. This is assigned as error, and it seems to me that the majority do not squarely meet the question thus raised. The doctrine that it is the duty of the master to provide a safe place for his servants to work in, and that he cannot delegate that authority, has no application to a case where the place is continually changing with the progress of the work. But I cannot tell from the opinion of the majority whether they intend to admit or deny this proposition. They say that as a question of law on the admitted facts and undisputed evidence, Engle was a vice principal. But there are no such undisputed facts either admitted or proven, except that Engle was a foreman and the work was necessarily or inherently dangerous both to Engle and to the other servants of defendant. As I said in my dissenting opinion in Holman v. Kempe, 70 Minn. 422, at page 431:

"The court did not make the facts that plaintiff was inexperienced in this kind of work and that the foreman knew it or should have known it (if such were the facts), any element in determining whether or not the foreman was a vice principal."

On the principles there laid down and laid down also in my dissenting and concurring opinions in Blomquist v. Chicago, 60 Minn. 426, 62 N. W. 818; Carlson v. Northwestern, 63 Minn. 428, 65 N. W.

914; Abel v. Butler-Ryan, 66 Minn. 16, 68 N. W. 205, and other cases, I am of the opinion that it was a question of fact for the jury whether or not Engle was a vice principal, and that it was error to charge as a question of law that he was such vice principal. I concur in the rest of the opinion.