JOHN TOMAZIN v. SHENANGO FURNACE COMPANY.[1]

February 14, 1908.

Nos. 15,467—(188).

**Dangerous Premises.**

The jury were justified by the evidence in finding that appellant, through its mining captain and shift boss, assured respondent, a common miner, that a certain place in a drift was safe enough to assume the task of repairing the timbering at that point.

**Questions for Jury.**

Whether respondent was guilty of contributory negligence, or assumed the risks of making the repairs on the occasion, were proper questions for the jury.

[1] Reported in 114 N. W. 1128.

Action in the district court for St. Louis county to recover $1,999.90 damages for personal injuries. The case was tried before Dibell, J., and a jury which returned a verdict in favor of plaintiff for the sum demanded. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

E. C. Kennedy, for appellant.

L. H. Corcoran and Alexander Marshall, for respondent.

LEWIS, J.

The principal question in this case is whether appellant company is chargeable with negligence in directing respondent to repair certain timbering in a drift in appellant's mine, assuring him that the place was safe to approach for that purpose.

Respondent and another were employed in mining ore by contract, and had been driving a drift into the ore body and taking out the ore as they went along. On a Saturday night when the men quit work they left an ore car near the end of the drift, and when they returned to work on Monday morning one of the caps constituting a part of the timbering in the drift had partially broken, releasing the lagging, and considerable earth and sand had fallen from above and covered part of the tram. The men waited for the boss, who, when he arrived, told them they would have to get the car out or pay $50 for it. The men then shoveled the earth off the track and pulled the car out. Shortly after this was done the mining captain came along, and, as testified to by respondent: "He told me to put a strong cap on it, with strong lagging, and fix the place. * * * He told me to go there and fix it. 'You can work further then.' * * * To go and fix the place. 'You can have the job afterwards.'" Respondent also testified that the mining boss said: "The place is all right; good place. You make good money. * * * That is nice place. You can make money." Immediately the mining boss went with the two men and secured a new cap, or timber, to take the place of the broken one. They put the same on a car, and the two men started back with it toward the cave-in, unaccompanied by the boss. As they approached the place, the other man became frightened and went away, leaving respondent alone, and he pulled the car with the new cap on it to the place of the broken cap, and before attempting to disturb the timbers the earth above gave way and came down in large

quantities. Respondent was buried. thereunder, and as a result sustained a broken leg.

It was the business of the mining captain, as testified to by himself, to let contracts, measure up the ore, look over the timber, and see that the working places were safe. The mining boss was next in authority under the captain, and charged with carrying his orders into effect. It was the duty of the miners to set up their own timbering as they advanced in a drift. It was not their duty to oversee the timbering after it had been put in place; but they made repairs when directed so to do.

If the evidence produced on behalf of respondent, as above outlined, was true, we think it was sufficient to justify the jury in finding that respondent did not depend upon his own experience and judgment as to the safety of the place, but relied on the presumably superior judgment and experience of the mining captain and boss. If it had been a part of respondent's duty to make all such repairs, then the mere fact that the captain directed him to make them would not be an assurance of safety. It would seem necessary that the duty of looking over the workings and timbering of a mine and keeping the same in safe condition should be delegated to a man of intelligence and experience in such matters, and it cannot properly be left to miners, who are temporarily employed. This duty was recognized by appellant company, and was imposed upon the mining captain and boss. It seems quite probable that the condition of the cave-in could have been tested by these men and proper precautions taken to prevent what happened. Under all the circumstances, a question was made for the jury.

The evidence was sufficient to go to the jury, also, upon the question of the assumption of risk and contributory negligence on the part of respondent, and the following cases are sufficient to illustrate the rule applicable here: Carlson v. Northwestern Tel. Exch. Co., 63 Minn. 428, 65 N. W. 914; Stahl v. City of Duluth, 71 Minn. 341, 74 N. W. 143; Hill v. Winston, 73 Minn. 80, 75 N. W. 1030; Hjelm v. Western Granite Contracting Co., 94 Minn. 169, 102 N. W. 384; Lake Superior v. Erickson, 39 Mich. 492, 33 Am. 423.

We find no reversible error in the ruling of the court, and do not deem it necessary to give the other assignments special notice.

Affirmed.