## CHARLES G. HEYDMAN v. RED WING BRICK COMPANY.[1]

August 26, 1910.

Nos. 16,645—(216).

**Negligence — evidence.**

Evidence considered, and *held* to sustain finding of the jury as to defendant's negligence, also as to plaintiff's contributory negligence and assumption of risk.

**Master and servant — difference in duty of inspection.**

The obligation upon the master is to exercise reasonable care in providing

[1]Reported in 127 N. W. 561.

and maintaining a safe place for the performance, and to adopt safe methods for the carrying out of the enterprise. This includes reasonable and proper inspection by the master. The servant is not required to inspect, but may assume the safety of the place, and is only guilty of negligence for disregarding such dangerous conditions as are obvious.

### Pecuniary interest of jurors in insuring company.

When impaneling a jury in an action to recover for personal injuries, it is proper to ascertain whether an insurance company is maintaining the defense, and whether any of the proposed jurors are interested in that or any other insurance company.

### Rejection of evidence.

The refusal of the court to receive in evidence cards upon which were entered plaintiff's time and the character of his work was not error when the character and extent of plaintiff's prior experience was shown by other evidence.

### Impeachment of party — prior statements.

Prior to the trial plaintiff made statements concerning the accident. The statements were taken by a stenographer, whose notes were subsequently transcribed. Defendant, for the purpose of impeaching plaintiff's testimony by showing contradictory statements, was permitted to put to the stenographer the direct question whether or not plaintiff made a certain statement, and the stenographer was permitted to use the transcript of her notes to refresh her recollection, and then answer whether or not such statement was made. *Held*, it was not error to refuse to admit the transcript in evidence, or to permit the stenographer to read to the jury the questions and answers contained in it.

Action in the district court for Goodhue county to recover $6,000 for personal injuries sustained while working in defendant's brick factory.

The complaint, after describing the construction of the bin mentioned in the opinion and the manner of doing the work, alleged that defendant neglected to perform its duty to properly mix the materials used; to furnish plaintiff a reasonably safe place in which to work; to keep such place well and reasonably lighted and the place and substance in a reasonably safe condition, and to warn plaintiff of its dangers; that on the day of the accident, defendant negligently ordered plaintiff, a common laborer, to go to work in the bin while it was dark and full of suffocating dust, and the improperly-

mixed material was dangerously hot and had formed in overhanging cakes. The answer admitted the construction of the bin as alleged and the fact of the injury, but denied the other allegations. The entrance to the bin was by a ladder from top to bottom against one end. The other facts are stated in the opinion.

The case was tried before Crosby, J., and a jury which returned a verdict for $3,000 in favor of plaintiff. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*F. W. Foot* and *Bracelin & Cronin,* for appellant.

*Mohn & Mohn,* for respondent.

O'BRIEN, J.

Plaintiff was injured while employed by defendant in manufacturing brick. The method was as follows: After the material was properly mixed, it was placed in a V-shaped bin twenty feet deep, twenty-four feet long, and sixteen feet wide at the top. A vertical partition extended through the center. At the bottom of the bin a wide rubber movable belt carried out the material in proper quantities to the pressmen, and was placed by them in the press. The mixture was more or less adhesive, and, being partly composed of lime, generated considerable heat. Inside of the bin were iron rods sufficient to sustain the weight of one or more persons. The bin had capacity sufficient for two days' operations, but generally only one day's run was placed in it.

Plaintiff had for some time prior to the accident been employed in different positions in and about the factory. He had assisted in mixing the material, and for at least fourteen days prior to the accident had acted as pressman. There were three of such pressmen. They took turns in drawing the material from the bins to the receptacle in which it was carried to the press, and when, as occasionally happened, the belt failed to draw out the material, the pressman whose turn it was to be there was required to loosen up the material, and, if necessary, enter the bin for that purpose. Plaintiff had done this prior to the day of the accident, and on one such occasion there had been a caving in or slipping of the material. The person doing

this used a shovel, of which there were two, one short and one long handled.

The day prior to the accident material for two days' run of the press had been thus prepared. The second day's supply had apparently caked more or less during the night, and on the morning upon which the accident happened it became necessary to loosen it, and for that purpose, plaintiff testified, he entered the bin, and, crawling or standing upon the iron rods, took the short handled shovel. While in that position, and before he had time to use the shovel, the material loosened and caved down upon him, covering his legs and portions of his body, producing severe burns, from the consequences of which he was still suffering at the time of the trial. There was testimony that the electric lights with which the bin was supplied were not burning. The cleanliness of the windows and the degree of light were subjects of disputed testimony.

Plaintiff had a verdict from the jury, and defendant appeals from an order denying an alternative motion.

1. A consideration of the evidence has led us to the conclusion that the trial court properly submitted to the jury the questions as to defendant's negligence and plaintiff's contributory negligence and assumption of risk. That the interior of the bin was a hazardous place in which to work must be conceded. Its shape and size, as well as the precarious footing furnished, all go to establish this fact, and this is true without taking into consideration the further claim by plaintiff as to the insufficient lighting, and we conclude that the jury was justified in finding it was negligence upon the part of the defendant to require its employee to enter a place of this character in which to perform his duties. We are unable to avoid the conclusion that some method might easily have been adopted to loosen the material in the bin when it became caked other than the means employed, and which would not have exposed plaintiff to the hazard encountered by him.

It is claimed plaintiff was negligent in using the short rather than the long handled shovel. Plaintiff's testimony was that he was caught and covered by the material while he was upon the rods and before he used the shovel. But, in any event, that would clearly be a question for the jury.

112 M.—11.

A closer question is whether plaintiff must be held to have assumed the, risk incident to the caving down of the material. It would be somewhat difficult to avoid the conclusion that he did assume such risk if it was clear that the condition of the material was apparent to any person entering the bin. This would depend largely upon how well the place was lighted. The evidence as to this was conflicting, which made it fairly a question for the jury.

The obligation resting upon the defendant was altogether different from that which plaintiff was under. It was the defendant's duty to exercise reasonable care in providing a safe place, and to exercise the same care in keeping it safe. The plaintiff, upon the contrary, might have rightfully assumed the safety of the place, [and] that the defendant had discharged its duty. In acting upon such assumption, the plaintiff was guilty of no negligence unless the dangerous condition would be necessarily brought to his knowledge by the ordinary use of his senses. A failure to note such conditions would not be negligence upon the part of the plaintiff unless it affirmatively appeared that he disregarded such as were obvious; while the defendant would be guilty of negligence in failing to note conditions which might be observed upon reasonable and proper inspection. The difference in the degree of care required arises from the fact that the servant may, while the master may not, assume the safety of the place. Rase v. Minneapolis, St. P. & S. S. M. Ry. Co., 107 Minn. 260, 120 N. W. 360; Choctaw, Oklahoma & Gulf R. Co. v. McDade, 191 U. S. 64, 24 Sup. Ct. 24, 48 L. ed. 96; Clow & Sons v. Boltz, 92 Fed. 572, 34 C. C. A. 550.

Counsel insists that this case falls within the line of the Gravel Pit cases. Kletschka v. Minneapolis & St. L. R. Co., 80 Minn. 238, 83 N. W. 133, and cases cited, We think there is a wide distinction between the knowledge which would be implied upon the part of a workman engaged upon an earthen embankment in open daylight and one in the inclosed bin such as that already described. Defendant submitted a request for instructions upon this subject which contained the following: " *   *   *   In this case it was the plaintiff's duty to use his eyes and to look to see conditions as to the formation of the silo, and all conditions of his place of work." The language

quoted would have practically placed the duty of inspecting upon the plaintiff. As said, he was under no such obligation and the request was properly refused. We find no error in the charge as given.

2. When impaneling the jury, counsel for plaintiff asked that defendant's counsel state whether they represented "the real defendant or an insurance company, and, if an insurance company is defending, the name of it." The court refused to require the answer, and defendant's counsel stated they had no objection to any juror being asked whether he had any interest in any insurance company. Plaintiff's attorney further said: "Will you also give me the name of the company that insured this man?" This request was objected to as assuming a fact not shown, and as tending to prejudice the issues. The defendant's attorney entered a further objection upon the record in which exception was taken to the use by counsel for plaintiff of this language: "The accident company which is the real defendant in this case."

It is well settled that for the purpose of ascertaining the qualifications of proposed jurors it may be shown that an insurance company is interested in the result of the action, and that any connection between the proposed jurors and such insurance company may also be shown. Spoonick v. Backus-Brooks Co., 89 Minn. 354, 94 N. W. 1079. In examining jurors, however, an attorney is not limited to questions which would establish bias. He has a right to elicit sufficient information to enable him to determine the advisability of interposing a peremptory challenge; and, in a case in which the defense is being maintained by an insurance company of any character, it would be only a proper precaution upon the part of an attorney to ascertain whether or not the proposed juror was connected with that or any other insurance company.

The question presented in Gracz v. Anderson, 104 Minn. 476, 116 N. W. 1116, was quite different. In that case the defendant, called as a witness upon his own behalf, was asked upon cross-examination whether or not he was insured. It was claimed such questions were proper for the purpose of testing the credibility of a witness. The trial court limited the cross-examination, and this court held such limitation not to be an abuse of discretion. Here the question arose

upon the impaneling of the jury, and we do not think any prejudicial error occurred.

3. Defendant offered in evidence certain cards upon which plaintiff's time and the character of his work were entered. The entries were in the handwriting of the superintendent who had died prior to the trial, and were identified by an officer of the company. The court refused to admit the cards in evidence, but permitted the witness to examine the cards and thereafter to give his independent recollection of the different kinds of work performed by plaintiff while in defendant's employment. Plaintiff had already testified that he had been employed as pressman for fourteen days prior to the accident, during which time he had taken his turn at loosening the material in the bin, and that on one occasion the material had caved in; so that the only dispute between the parties upon the question of defendant's opportunity to realize the danger connected with the work was so slight that, even conceding the cards which were made in the ordinary course of business and constituted a part of the records should have been admitted in evidence, we conclude that, taking into consideration the entire testimony, no prejudice resulted from this ruling.

4. After plaintiff was injured, he was, in the presence of a stenographer, questioned by one of defendant's counsel as to the manner of the accident. The evidence was that the stenographer did not take down each question and answer verbatim, but each conclusion arrived at after a series of questions was dictated to her and correctly noted. The conclusions so arrived at were verified as correct by the plaintiff. The stenographer on the same day transcribed her notes which were subsequently destroyed.

Upon the trial, she identified the transcript made by her, and testified it was absolutely correct. The transcript was not signed by the plaintiff, and contained statements which differed from his testimony as given at the trial.

Upon cross-examination of plaintiff, counsel for defendant made a proper foundation for impeachment by calling attention to the statements so made. In most instances the plaintiff denied making the statements, or denied that he made them just as they appeared in the

transcript. The trial court refused to permit the transcript in evidence, and refused to permit the stenographer to read the questions and answers to the jury, but did permit her to examine and read the transcript to refresh her recollection. Counsel were permitted to ask the witness directly whether or not plaintiff was asked a specific question and made a specific answer thereto, and, when the witness stated that she could not remember, she was permitted to examine the transcript, and then state whether he so answered. Several of plaintiff's prior statements were thus received, but the transcript itself was not permitted in evidence, nor was the witness permitted to directly read into the record any question or answer contained in it.

In determining the propriety of the rule adopted by the trial court, it must be remembered that the evidence so offered was intended for the purpose of impeaching plaintiff's testimony by showing that he had previously made contradictory statements. The necessary foundation for such impeachment of a witness not a party is laid when his attention is first directed to such statements, but contradictory statements by a party can be shown without his attention having first been called to them. 2 Wigmore, Evidence, § 1051. And the admission of a party is competent evidence tending to prove the fact so admitted. McManus v. Nichols-Chisholm Lumber Co., 105 Minn. 144, 117 N. W. 223. A proper form of question to be propounded to one called to impeach the testimony of a witness by contradictory statements would be to ask directly whether or not the witness to be impeached at a certain time and place said certain words or made a certain statement. A memorandum made by any person present at the time and place of such statement would not ordinarily be competent evidence, but the witness should be permitted to use it for the purpose of saying whether or not the statement was made. The fact that the person making the memorandum did so by means of stenographic notes subsequently transcribed, where the record is not an official one, at most only changes the rule governing the admission of such evidence to the extent of permitting the second writing or transcript to be used when its accuracy has been properly shown. Stahl v. City of Duluth, 71 Minn. 341, 74 N. W. 143. In the case

of an ordinary witness, the impeaching question would necessarily be confined to the direct one whether a given statement was made and the statement itself would be embodied in the question. An examination of the original record shows this to have been the course followed in Stahl v. City of Duluth, supra.

While counsel followed that course in the case at bar, he was permitted to proceed. The only question, therefore, is whether, because the impeaching testimony was directed against the evidence given by the plaintiff himself, a different rule should prevail. We see no reason for so holding. If the objection had been as to the foundation for the introduction of the testimony, a different question would be presented. But it was not claimed that the statements sought to be proven were literally in the language used by the plaintiff. We have no doubt they were conclusions made in entire good faith from his statements, and the testimony of the stenographer was that he acquiesced in their correctness. Still the transcript was not claimed to be a literal report of everything said, and, when defendant had the privilege of asking a direct question which would embody the statement claimed to have been made, we do not see how it was in any way prejudiced. The ruling of the trial court to the effect that it was necessary to show that the stenographer had no recollection of the statements independent of the transcript, while perhaps a narrower rule than that given in the Stahl case, had no effect upon defendant's rights, as the stenographer stated a number of times she had no such independent recollection.

The size of the verdict was such that we would not feel justified in overruling the judgment of the trial court to the effect that it was not excessive.

Order affirmed.